Darrin A. **BOWLES**, Petitioner,

v.

Gerald A. **BERGE**, Superintendent, Fox Lake Correctional Institution, Respondent.

No. 96–C–1031.

United States District Court, E.D. Wisconsin.

March 31, 1998.

Darrin A. Bowles, pro se.

Daniel J. O'Brien, Assistant Attorney General, Madison, WI, for Respondent.

### *DECISION AND ORDER*

CURRAN, District Judge.

Darrin A. Bowles, a prisoner in state custody, is seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. On Christmas Day of 1992, Bowles drove a long-time friend to his home. The two spent the evening and early hours of the next day drinking beer and brandy, watching a boxing video, playing cards, and arguing. Later that morning, the friend, Michael Townsel, was found lying on a city street dead of gunshot wounds.

Bowles was arrested and charged with the homicide. After a trial by jury in the Circuit Court of Milwaukee County, he was convicted on April 1, 1993, of one count of first degree reckless homicide. He is serving a sentence of fifteen years of imprisonment and is currently in the custody of Respondent Gerald A. Berge, Warden of the Fox Lake (Wisconsin) Correctional Institution. This court, which is located in the district where Bowles was convicted, is empowered to consider his petition under 28 U.S.C. § 2241(a) & (d). In seeking collateral review, Bowles contends that: (1) the state trial court denied him due process when it refused to give a proffered lesser included offense instruction and (2) his trial counsel's closing argument relieved the prosecution of proving an element of the crime of which he was convicted.

The Respondent has answered and denies that Bowles is entitled to relief. As part of his response, Warden Berge has submitted complete transcripts of the relevant proceedings in the state courts which the court has now reviewed. The parties have fully briefed the issues raised, so this matter is ready for resolution.

### I. *FACTS AND PRIOR PROCEEDINGS*

Following his conviction, Bowles proceeded *pro se* to challenge his conviction in the Wisconsin Court of Appeals. *See State v. Bowles,* No. 94–0162–CR, 1995 WL 366171 (Wis.Ct.App. May 9, 1995) (per curiam), *review denied,* 537 N.W.2d 571 (1995). In affirming the trial court, the appellate court recounted the following facts material to Bowles' case:

> Bowles and Townsel drank heavily for about nine hours before the shooting. At 4:00 a.m., Bowles, while highly intoxicated, decided to drive Townsel home. Bowles placed a .380–caliber semi-automatic handgun on the car seat between himself and Townsel. According to Bowles, Townsel picked up the gun during the ride, refused to give it back to Bowles, and then fired the gun out the open passenger window. Bowles stated that he pulled the car over and that a struggle over the gun ensued. Townsel was shot three times; twice to his head, and once into his heart. According to the expert testimony, all three fatal shots were contact wounds. The first shot was through Townsel's ear, penetrating his brain; the second through his forehead; and the third perforating his heart. The handgun had a 12.5–pound trigger-pull, which a gun expert testified was on the "heavy side" for trigger-pull pressure. He also testified that once the gun was cocked, the gun could be fired in rapid succession with each pull of the trigger. He estimated that three shots could be fired within one second.
>
> Bowles contended at trial that the gun may have been discharged during the struggle for the gun when he and Townsel both had their fingers on the trigger. Bowles admitted that he gained control of the gun after the first two shots, but that the third shot "somehow" fired into Townsel's heart. After the shooting, Bowles drove around, never asking for assistance, and then dumped Townsel's body in a gutter. He then went home, hid the gun in a closet, and went to bed without telling his wife about the shooting. The next day he feigned surprise upon learning of Townsel's death until he was later interrogated by the police.

*Id.* at *2.

Bowles was charged with first-degree intentional homicide, which, at the time of the offense, was defined as follows:

**940.1 First-degree intentional homicide. (1) OFFENSE.** Except as provided in sub. (2), whoever causes the death of

another human being with intent to kill that person or another is guilty of a Class A felony.

Wis.Stat. § 940.01(1) (1991).

At trial, after both sides rested, the judge held a jury instruction conference and agreed to give an instruction allowing the jury to find first-degree intentional homicide. The jury was instructed that:

First degree intentional homicide as defined in Section 940.01 of the Criminal Code of Wisconsin is committed by one who causes the death of another human being with the intent to kill that person or another.

Before the defendant may be found guilty of first degree intentional homicide, the state must prove by evidence which satisfies you beyond a reasonable doubt that the following two elements were present:

First, that the defendant caused the death of Michael J. Townsel.

And, second, that the defendant intended to kill Michael J. Townsel.

The first element requires that the relation of cause and effect existed between the death of Michael J. Townsel and the act of the defendant. Before the relation of cause and effect can be found to exist, it must appear that the defendant's act was a substantial factor in producing the death.

The second element requires [that] the defendant acted with the intent to kill Michael J. Townsel. Under the criminal code, the phrase "with intent to kill" means that the defendant had the mental purpose to take the life of another human being or was aware that his conduct was practically certain to cause the death of another human being.

Answer to Petition for Writ of Habeas Corpus at Exhibit M (Trial Transcript at 41–42).

The judge also agreed to give an instruction on the lesser included offense of first-degree reckless homicide, a crime which, at that time, was defined by statute as follows:

**940.02 First-degree reckless homicide.** (1) Whoever recklessly causes the death of another human being under circumstances which show utter disregard for human life is guilty of a Class B felony.

Wis.Stat. § 940.02(1) (1991). Based on this statute, the jury was instructed that:

First degree reckless homicide as defined in Section 940.02 Sub (1) of the Criminal Code of Wisconsin is committed by one who recklessly causes the death of another human being under circumstances which show utter disregard for human life.

Before the defendant may be found guilty of first degree reckless homicide, the state must prove by evidence which satisfies you beyond a reasonable doubt that the following three elements of this offense were present:

First, that the defendant caused the death of Michael J. Townsel.

Second, the defendant caused the death by criminally reckless conduct.

And, third, that the circumstances of the defendant's conduct showed utter disregard for human life.

The first element requires that the relation of cause and effect exists between the death of Michael J. Townsel and the conduct of the defendant. Before the relation of cause and effect can be found to exist, it must appear that the defendant's conduct was a substantial factor in producing the death.

The second element requires that the defendant caused the death by criminally reckless conduct. This requires that the defendant's conduct created an unreasonable and substantial risk of death or great bodily harm to another person, and that the defendant was aware that his conduct created such a risk.

The third element requires that the circumstances of the defendant's conduct showed utter disregard for human life.

In determining whether the conduct showed utter disregard for human life, you should consider all of the factors relating to the conduct. These include the following: What the defendant was doing, why he was doing it, how dangerous the conduct was, how obvious the danger was, and whether the conduct showed any regard for human life.

If you are satisfied beyond a reasonable doubt that the defendant caused the death

of Michael J. Townsel by criminally reckless conduct and the circumstances of the conduct showed utter disregard for human life, you should find the defendant guilty of first degree reckless homicide.

If you are not so satisfied, you must find the defendant not guilty of first degree intentional homicide and first degree reckless homicide.

Answer to Petition for Writ of Habeas Corpus at Exhibit M (Trial Transcript at 45–47).

Over the Defendant's objection, the judge refused to give an instruction on an additional lesser included offense of second-degree reckless homicide.[1] The trial judge reasoned that:

The jury in this case—a reasonable jury I believe could find the defendant did not intend to kill as required by first degree reckless homicide but could unanimously find that the defendant recklessly caused the death of Mr. Townsel under circumstances which showed utter disregard for human life; and, therefore, I think the lesser included of first degree reckless homicide is appropriate.

As to the second degree reckless homicide, the testimony is basically undisputed by the medical examiner in this case that all three wounds were contact wounds, that the victim was shot three times with the gun up against his skin or clothing; and it is my belief that a reasonable jury could not find the defendant not guilty of first degree reckless homicide but yet find the defendant guilty of second degree reckless homicide.

My reasoning on that is that if the jury is convinced beyond a reasonable doubt that the defendant acted recklessly and that the reckless conduct caused the death of Mr. Townsel, I don't believe there is any reasonable evidence that would support them finding that it was not under circumstances which showed utter disregard for human life. And either they are going to find it was reckless and showed utter disregard for human life or they could find him not guilty of everything; but I don't think a reasonable jury even looking at the evidence in a light most favorable to the defense could do that.

So I will not give that despite the request from the defense.

Answer to Petition for Writ of Habeas Corpus at Exhibit M (Trial Transcript at 32–34).

The jury acquitted Bowles of first-degree intentional homicide, but convicted him of first-degree reckless homicide. Bowles proceeded *pro se* on appeal. He argued that the trial court erred in failing to submit the additional lesser-included offense jury instruction for second-degree reckless homicide, because the evidence provided reasonable doubt as to the "under circumstances which show utter disregard for life" element of the greater offense of first-degree reckless homicide.

Bowles' argument was unavailing with the court of appeals which agreed with the trial court that the only reasonable view of the evidence was that Bowles evinced "utter disregard for human life." The court explained that:

Three contact wounds—two to the head, and one to the heart—fired from a gun with over a twelve pound trigger-pull, belie Bowles's attempt to show that the gun fired during a struggle undertaken to prevent Townsel from harming someone with the gun. Bowles argues that the State's gun expert testified that the gun could be discharged three times in less than a second, thereby ostensibly supporting Bowles's version of the shooting. In order for this to occur, however, the "heavy" trigger had to have been pulled and then released three times in rapid succession. A reasonable view of the nature of Townsel's fatal wounds refutes that Townsel could have "pulled" the trigger three times in less than a second after receiving a gunshot to either the head or heart. Further, Bowles admits that he had control of the gun when the third shot occurred. Thus, even if Bowles's version of the events could have occurred with respect to either of the first two gunshots, the third

1. A Wisconsin statute in effect at the time of the offense defined "second-degree reckless homicide" as follows:

**940.06 Second-degree reckless homicide.** Whoever recklessly causes the death of another human being is guilty of a Class C felony. Wis.Stat. § 940.06 (1991).

shot to the heart is not reasonably explained away by Bowles's version. This third shot alone evinces an "utter disregard for human life." Finally, analogously to the defendant in Davis, Bowles, once he was aware of the injury to the victim, showed no concern for life. He drove around in the car, "dumped" Townsel's body in a gutter, and then went home to sleep.

*State v. Bowles*, No. 94-0162-CR, 1995 WL 366171 at *3(Wis.Ct.App. May 9, 1995) (per curiam), *review denied*, 537 N.W.2d 571 (1995). Thus, the appellate court concluded that: Even when viewing the evidence most favorable to Bowles, we cannot conclude that there is a reasonable basis in the evidence by which a jury could have acquitted Bowles of first-degree reckless homicide and yet convict him of second-degree reckless homicide. Nor do we conclude that there is reasonable doubt as to the "utter disregard for human life element." *Id.* at *1.

On appeal, Bowles also argued that the state was improperly relieved of its burden of proof by his trial counsel's closing argument. The court characterized this contention as a "thinly veiled claim of ineffective assistance of trial counsel," and pronounced the issue waived because Bowles had not preserved it by filing a timely motion for postconviction relief.

Having rejected Bowles' arguments, the court of appeals affirmed the trial court's judgment of conviction. Then, the Wisconsin Supreme Court denied review. *See State v. Bowles*, 537 N.W.2d 571 (1995).

## II. *COLLATERAL REVIEW*

After his state court remedies proved unavailing, Bowles filed his petition for a writ of habeas corpus in this court. He asks for a new trial because his federal constitutional right to due process was violated when an instruction on the lesser included offense of second degree reckless homicide was not given at his trial and when, in closing argument, his trial counsel told the jury that Bowles had caused the victim's death, but that he should only be convicted of reckless homicide. Bowles contends that this argument relieved the state of proving all the elements of first degree reckless homicide.

## A. PROCEDURAL DEFAULT

Before a federal court can consider the merits of a petition for habeas corpus relief, the court must examine whether the petitioner has exhausted all available state remedies and raised all his claims during the course of the state proceedings. *See Lostutter v. Peters*, 50 F.3d 392, 394 (7th Cir.), *cert. denied, sub. nom. Lostutter v. Washington*, 516 U.S. 843, 116 S.Ct. 130, 133 L.Ed.2d 79 (1995); *Henderson v. Thieret*, 859 F.2d 492, 496 (7th Cir.1988), *cert. denied*, 490 U.S. 1009, 109 S.Ct. 1648, 104 L.Ed.2d 163 (1989). If a petitioner has failed to satisfy either of these requirements, "the petition is barred either for a failure to exhaust state remedies or for a procedural default." *Henderson v. Thieret*, 859 F.2d at 496.

In this case, the state concedes that Bowles has exhausted all his available state remedies, but argues that his claim that his attorney's closing argument relieved the state of proving all the elements of the crime charged has been defaulted. The Wisconsin Court of Appeals refused to consider that issue on appeal. The court characterized the claim as, in substance, a claim of ineffective assistance of counsel and refused to consider it because Bowles had not properly preserved the issue by seeking postconviction relief. The court declared the issue waived. *See State v. Bowles*, No. 94-0162-CR, 1995 WL 366171 at *** 3 (Wis.Ct.App. May 9, 1995) (per curiam), *review denied*, 537 N.W.2d 571 (1995). Thus, the state argues that this claim, which Bowles has raised once again in federal court, is barred by the doctrine of procedural default.

Procedural default can occur: (1) when a petition to the federal court includes new claims that the petitioner failed to raise at the state level, *see Henderson*, 859 F.2d at 496; or (2) where the state court declined to address a federal claim because the petitioner failed to comply with a state procedural requirement. *See Coleman v. Thompson*, 501 U.S. 722, 729-30, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). The second ground applies in this case. The Wisconsin Court of Appeals, the highest state court to review Bowles' claim, ruled that he had waived the ineffectiveness of trial counsel issue by fail-

ing to raise it in postconviction proceedings in accordance with well-established Wisconsin law.

■ When a state court declines to review an issue because the issue was improperly preserved, the state court decision must rest upon a state law ground that is both "independent of the federal question and adequate to support the judgment." *Coleman*, 501 U.S. at 730. Whether the ground is independent depends on state law, *see Hogan v. McBride*, 74 F.3d 144, 146 (7th Cir.), *opinion modified on other grounds on denial of rehearing* by 79 F.3d 578 (7th Cir.1996); whether it is adequate depends on federal law. *Liegakos v. Cooke*, 106 F.3d 1381, 1385 (7th Cir.1997).

■ The Wisconsin Court of Appeals did not cite any statute or case law in support of its waiver ruling. And, the Respondent in this habeas action failed to address the issue of whether the state decision rested upon adequate and independent grounds. Nevertheless, this court's review of Wisconsin's jurisprudence leads to the conclusion that the grounds upon which the Wisconsin Court of Appeals refused to consider the merits of Bowles' claim that his counsel's closing argument violated his constitutional rights [2] were adequate and independent. The court of appeals pointed out that Bowles had failed to present this claim at the time (timely postconviction motions) and in the way (by a trial court hearing) required by Wisconsin decisional law. *See State v. Simmons*, 57 Wis.2d 285, 297, 203 N.W.2d 887, 894–95 (1973); *State v. Machner*, 92 Wis.2d 797, 804, 285 N.W.2d 905, 908 (Ct.App.1979). In its 1973 opinion in *State v. Simmons*, the Wisconsin Supreme Court ruled that:

> When the competency of trial counsel is questioned, it is incumbent upon one who seeks to show that incompetency to give notice to trial counsel that his handling of a criminal matter is being questioned on post-trial or post-conviction proceedings. We do not believe that the professional competence of a lawyer should be determined ex parte on the unsupported allega-

tions of a disappointed defendant that another choice of strategy might have been preferable.

> .... Where a counsel's conduct at trial is drawn into question, he should be notified and have the opportunity to appear at the hearing in which his conduct is challenged.

*Simmons*, 57 Wis.2d at 297–98, 203 N.W.2d at 895. Similarly, in *State v. Machner*, the court of appeals advised that:

> This court is of the opinion that where a counsel's conduct at trial is questioned, it is the duty and responsibility of subsequent counsel to go beyond mere notification and to require counsel's presence at the hearing in which is conduct is challenged. We hold that it is a prerequisite to a claim of ineffective representation on appeal to preserve the testimony of trial counsel. We cannot otherwise determine whether trial counsel's actions were the result of incompetence or deliberate trial strategies. In such situations, then, it is the better rule, and in the client's best interests, to require trial counsel to explain the reasons underlying his handling of a case.

*Id.* at 804, 285 N.W.2d at 908–09. Thus, this court concludes that Bowles' failure to invoke Wisconsin's procedure, as outlined in *Machner* is a ground independent of any federal claim.

■ A rule of procedure is adequate to prevent federal collateral review when the petitioner can be deemed to have been apprised of its existence at the time he omitted the procedural step in question. *See Barr v. Columbia*, 378 U.S. 146, 149, 84 S.Ct. 1734, 12 L.Ed.2d 766 (1964); *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 457, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958). The United States Supreme Court has explained that only a "firmly established and regularly followed state practice" prevents federal review. *James v. Kentucky*, 466 U.S. 341, 348–51, 104 S.Ct. 1830, 80 L.Ed.2d 346 (1984). The state rule of practice must have been in place and enforced "by the time as of which

---

**2.** The Wisconsin Court of Appeals' characterization of Bowles' claim as one for denial of effective assistance of counsel under the Sixth Amendment rather than a claim for denial of due

process, as Bowles contends, is not unreasonable or contrary to law. Therefore, this court will analyze the claim as one for ineffective assistance of counsel.

it is to be applied." *Ford v. Georgia*, 498 U.S. 411, 424, 111 S.Ct. 850, 112 L.Ed.2d 935 (1991).

■ As quoted above, *State v. Simmons*, decided in 1973, and *State v. Machner*, decided in 1979, set forth the procedural requirements for challenging a trial counsel's alleged errors. This procedure was in place and regularly enforced, *see, e.g., State v. Burroughs*, 117 Wis.2d 293, 308, 344 N.W.2d 149, 157 (1984); *State v. Krieger*, 163 Wis.2d 241, 253, 471 N.W.2d 599, 603 (App.1991), well before Bowles' conviction in 1993. Therefore, this court concludes that the state appellate court's forfeiture ruling was supported by adequate grounds.

In sum, because Bowles failed to bring a postconviction motion in the trial court and because the Wisconsin Court of Appeals based its waiver ruling on a state law ground that is adequate and independent of the merits of the federal claim, Bowles' claim can be barred by the doctrine of procedural default. *See Harris v. Reed*, 489 U.S. 255, 260, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1988).

■ Federal review may still be available if Bowles could show cause for the default and actual prejudice or if he could demonstrate that the failure to consider his claim would result in a fundamental miscarriage of justice. *See McCleskey v. Zant*, 499 U.S. 467, 493–95, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991). In his brief, Bowles has failed to make any relevant showing of cause for his failure to comply with the state procedural rule and he has made no showing of actual innocence or that a fundamental miscarriage of justice will result. Accordingly, federal habeas corpus review of his ineffective assistance of counsel claim remains unavailable due to procedural default. *See Lostutter v. Peters*, 50 F.3d 392, 395 (7th Cir.), *cert. denied*, 516 U.S. 843, 116 S.Ct. 130, 133 L.Ed.2d 79 (1995); *Buelow v. Dickey*, 847 F.2d 420, 425 (7th Cir.1988), *cert. denied*, 489 U.S. 1032, 109 S.Ct. 1168, 103 L.Ed.2d 227 (1989).

## B. AEDPA STANDARDS

■ Bowles filed his petition after the enactment of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 (AEDPA) (enacted April 24, 1996). Therefore, the provisions of the AEDPA apply to his claims. *See Lindh v. Murphy*, —— U.S. ——, 117 S.Ct. 2059, 2063, 138 L.Ed.2d 481 (1997); *Holman v. Gilmore*, 126 F.3d 876, 879–80 (7th Cir.1997), *cert. denied sub. nom. Holman v. Page*, —— U.S. ——, 118 S.Ct. 1169, 140 L.Ed.2d 179 (1998). This new law amends 28 U.S.C. § 2254(d) by requiring federal courts "to give greater deference to the determinations made by state courts than they were required to do under the previous law." *Emerson v. Gramley*, 91 F.3d 898, 900 (7th Cir.1996), *cert. denied sub nom. Emerson v. Gilmore*, —— U.S. ——, 117 S.Ct. 1260, 137 L.Ed.2d 339 (1997). Specifically, the new subsection 2254(d) establishes that greater deference be accorded state court determinations by providing that:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Courts using this new subsection to analyze a habeas corpus claim must first determine whether the issue is solely a question of law, or a mixed question of law and fact, or solely a question of fact. *See Lindh v. Murphy*, 96 F.3d 856, 870 (7th Cir.1996), *rev'd on other grounds*, —— U.S. ——, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). The "contrary to" clause of subsection 2254(d)(1) applies solely to questions of law. *See Lindh v. Murphy*, 96 F.3d 856, 869 (7th Cir.1996), *rev'd on other grounds*, —— U.S. ——, 117 S.Ct. 726, 136 L.Ed.2d 643 (1997). It requires federal courts "to give state courts' opinions a respectful reading, and to listen carefully to their conclusions, but when the state court

addresses a legal question, it is the law as determined by the Supreme Court of the United States that prevails." *Id.*

In contrast, where mixed questions of law and fact arise, federal courts will not grant collateral relief from state court judgments unless the state court's judgment is "unreasonable." *Id.* at 870. Mixed constitutional questions of law and fact are those decisions "which require the application of a legal standard to the historical-fact determinations." *Thompson v. Keohane*, 516 U.S. 99, 109, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995). Unreasonableness equates to a demonstration of incorrectness by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). In determining whether a state court's application of Supreme Court case law was reasonable, a federal court must assess whether the determination was minimally consistent with the facts and circumstances of the case. *See Hennon v. Cooper*, 109 F.3d 330 (7th Cir.), *cert. denied*, — U.S. —, 118 S.Ct. 72, 139 L.Ed.2d 32 (1997).

Finally, facts found by a state court are presumed to be correct unless the petitioner rebuts this presumption with clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Williams v. Parke*, 133 F.3d 971, 973 (7th Cir.1997). The AEDPA amended the habeas corpus statute to provide that:

(e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

(2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—

(A) the claim relies on—

(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e). Bowles has not shown entitlement to an evidentiary hearing under this standard and has not rebutted the presumption that the facts set forth by the Wisconsin Court of Appeals are correct.

### C. DUE PROCESS

The only issue remaining in this action is whether Bowles was deprived of his right to due process when the trial court refused to give a lesser included offense instruction which would have allowed the jury to find him guilty of second degree reckless homicide. This is a mixed question of law and fact subject to the "unreasonable" standard of 28 U.S.C. § 2254(d). *See, e.g., Villafuerte v. Stewart*, 111 F.3d 616, 622 (9th Cir. 1997), *cert. denied*, — U.S. —, 118 S.Ct. 860, 139 L.Ed.2d 759 (1998).

In *Beck v. Alabama*, 447 U.S. 625, 637, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980), the Supreme Court held that an Alabama statute that barred instructions on lesser included offenses in capital cases violated the defendant's due process rights. *See Id.* at 637–38. However, neither the Supreme Court nor the Seventh Circuit has extended the holding in *Beck* to noncapital cases. *See Schad v. Arizona*, 501 U.S. 624, 646, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991); *Robertson v. Hanks*, 140 F.3d 707, 708 (7th Cir. 1998); *Nichols v. Gagnon*, 710 F.2d 1267, 1272 (7th Cir.1983), *cert. denied*, 466 U.S. 940, 104 S.Ct. 1918, 80 L.Ed.2d 465 (1984). Accordingly, the failure of a state trial court to instruct a jury on a lesser included offense in a noncapital case is not an error cognizable in federal habeas corpus review, unless the failure amounted to a fundamental miscarriage of justice. *See Hill v. United States*, 368 U.S. 424, 428, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962); *Nichols v. Gagnon*, 710 F.2d at 1272; *United States ex rel. Peery v. Sielaff*, 615 F.2d 402, 404 (7th Cir.1979), *cert. denied*, 446 U.S. 940, 100 S.Ct. 2163, 64 L.Ed.2d 794 (1980).

 In Bowles' noncapital[3] case, the state courts were not unreasonable in concluding that no credible evidence in the record would support a verdict based on the omitted instruction on the lesser included offense of second-degree reckless homicide. *See Wilson v. McCaughtry,* 994 F.2d 1228, 1238 (7th Cir.1993). This determination was consistent with the historical facts of Bowles' case. Moreover, failure to give the tendered instruction cannot be said to have been an omission inconsistent with the rudimentary demands of fair procedure. *See Hill,* 368 U.S. at 428. Therefore, Bowles was not deprived of due process and a writ of habeas corpus will not issue on this basis.

### ORDER

For the reasons explained above, the court ORDERS that Darrin A. Bowles' "Petition Under § 2254 for Writ of Habeas Corpus by a Person in State Custody" (filed September 9, 1996) IS DENIED.

IT IS FURTHER ORDERED that this action IS DISMISSED with prejudice.

IT IS FURTHER ORDERED that, pursuant to Federal Rule of Civil Procedure 58, the Clerk of Court shall enter a final judgment as a separate document. This judgment shall provide that:

This action came on for a hearing before the court, the Honorable Thomas J. Curran, District Judge, presiding, and the issues having been heard and a decision having been rendered,

IT IS ORDERED AND ADJUDGED,

that Darrin A. Bowles' petition for a writ of habeas corpus is denied and that this action is dismissed with prejudice.

---

**3.** A case in which the death penalty is not sought or imposed is not considered a capital case for postconviction due process purposes. *See, e.g.,* *Pitts v. Lockhart,* 911 F.2d 109 (8th Cir.1990), *cert. denied,* 501 U.S. 1253, 111 S.Ct. 2896, 115 L.Ed.2d 1060 (1991).