Oliver FRENCH, Jr., Petitioner,

v.

Kurt JONES, Respondent,

No. Civ. 98–CV–74520–DT.

United States District Court,
E.D. Michigan,
Southern Division.

March 25, 1999.

David A. Moran, Detroit, MI, for petitioner.

Olga Agnello–Raspa, Detroit, MI, for respondent.

### OPINION AND ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS[1]

TARNOW, District Judge.

Oliver French, Jr. (petitioner"), presently confined at the Carson City Regional Facility in Carson City, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his application, filed by David A. Moran of the Michigan State Appellate Defender's Office, petitioner challenges his conviction by a jury in the Detroit Recorder's Court before the Honorable Margie R. Braxton of one count of first degree murder, M.C.L. 750.316; M.S.A. 28.548, one count of second degree murder, M.C.L. 750.317; M.S.A. 28.549, two counts of assault with intent to commit murder, M.C.L. 750.83; M.S.A. 28.278, and possession of a firearm in the commission of a felony. M.C.L. 750.227b; M.S.A. 28.424(2). For the reasons stated below, petitioner's application for writ of habeas corpus is **GRANTED.**

### I. BACKGROUND

The underlying facts of the crimes are not in dispute by the parties. On September 10, 1994, petitioner, a committeeman with the United Auto Workers Maintenance and Construction Unit (hereinafter "the Unit") at the Ford Rouge Complex in Dearborn, Michigan, arrived at the Unit's trailer for a Saturday morning meeting with the Unit's leadership. During the meeting, petitioner pulled out a firearm

1. Staff Attorney Daniel Besser provided quali-  ty research assistance.

and shot four of the Unit's officers, killing two men and wounding the other two. Petitioner's defense at trial was insanity, based upon the testimony of a psychologist and psychiatrist that petitioner was legally insane at the time of the shooting because he suffered from a psychotic stress disorder and had also experienced an adverse reaction to hypertension medication that he was taking at the time of the offense. The prosecution presented the testimony of two psychologists, who each testified that petitioner was legally sane at the time of the commission of the offense. The trial lasted fourteen days.

After the conclusion of the testimony, the jury began its deliberations on the afternoon of April 27, 1995 although the jury limited itself to choosing a foreperson before being dismissed by the trial court for the day. On April 28, 1995, the jury began deliberating around 9:15 a.m. At 2:58 p.m., the jury sent out the first of three notes to the trial court indicating that it was deadlocked in its deliberations. The first note stated: "We can't reach a unanimous decision. Our minds are set". The jury was brought into the courtroom, where the trial court judge acknowledged receiving the note, but indicated that the deliberations would be adjourned for the weekend.

On the morning of May 1, 1995, the trial court, outside of the jury's presence, informed the prosecution and defense counsel that it would read the deadlocked jury instruction to the jury because the court felt that the jury had not deliberated long enough. Defense counsel objected to the giving of the instruction, arguing that, in light of the definitive nature of the note, in which the jurors indicated that their minds were "set", the giving of such an instruction would be coercive. The trial court, however, instructed the jury to continue to deliberate.

The jury continued to deliberate until 3:20 p.m. that day, when it sent out a second note indicating that it was deadlocked. The second note stated: "We

have followed your instructions. We are still unable to reach a decision." The trial court excused the jury for the remainder of the day.

On the morning of May 2, 1995, the trial court instructed the jury a second time to continue to deliberate. However, at 11:00 a.m., the jury sent out a third note asserting that it was still deadlocked. The third note stated: "We are *not* able to reach a verdict. We are not going to a[sic] reach a verdict." (emphasis original). After lunch, the trial court took up the third note from the jury with the prosecutor present, but with defense counsel absent. The trial court gave the following instruction to the jury:

> I trust you had a good lunch. I did too. We received your note that stated: "We are not able to reach a verdict. We are *not* underlined going a[sic] reach a verdict."
>
> That was approximately 11:00 o'clock this morning. Then we sent you to lunch to give you an opportunity to just kind of toss it around individually in your minds, and then we got you back this afternoon after lunch.
>
> Now, ladies and gentlemen, I must remind you that you did take an oath to render a true and just verdict. But if you are expected to render a verdict, you must communicate, and you must talk with each other.
>
> This case lasted how many days, Mr. Hutting [the prosecutor]? Approximately 16 days?
>
> MR. HUTTING: Fourteen days trial. For jury selection—
>
> THE COURT: All right. So it wouldn't be uncommon for deliberations to go on for some time, and I might remind you that you began to deliberate I think Friday, and I don't know how you can come to the conclusion that you are not going to reach a verdict.
>
> Based upon your oath that you would reach a true and just verdict, we expect you to communicate. As I stated be-

fore, exchange ideas. Give your views. Give your opinions and try to come to a verdict, it at all possible.

But if you don't communicate, you know that you can't reach a verdict. And when you took the oath, that was one of the promises that you made by raising your hand taking the oath, that you would deliberate upon a verdict, to try to reach a verdict. And we told you at the outset that it would not be an easy task, but we know that you can rise to the occasion.

So we'll ask that you return to the jury room. Thank you.

On May 3, 1995, defense counsel (Cornelius Pitts) moved for a mistrial, arguing that the jury's three notes definitively expressed that it could not reach a verdict. At the time he moved for a mistrial, Mr. Pitts was apparently unaware that his co-counsel (Monsey Wilson) had not been present when the jury was re-instructed. Shortly after the trial court denied the motion for mistrial, the jury returned with a verdict, finding petitioner guilty but mentally ill on the counts for which he was convicted.

Prior to sentencing, petitioner moved for a new trial on the basis that he was deprived of his Sixth Amendment right to counsel when the court instructed the jury, in defense counsel's absence, after receiving the third note from the jury being deadlocked. Petitioner also contended that the instruction given by the trial court was coercive.

Petitioner's motion for a new trial was argued on the day of sentencing. The prosecutor argued that, while neither Mr. Pitts or Mr. Wilson had been present when the trial court re-instructed the jury after receiving the third note indicating that they were deadlocked, he was certain that a Mr. Ty Jones had been present. Defense counsel responded that Mr. Jones was merely an investigator assisting counsel, that he was licensed to practice only in California, that he had never filed an appearance in this case, and had never ad-

dressed the court or questioned any witnesses. In addressing the motion for a new trial, the trial court noted:

This Court feels that the issue that has been brought up by Mr. Pitts as to the actual representation of Mr. French by either of his lawyers is one that has some merit.

However, at this time, this Court is prepared to go ahead with the sentencing, and I would deal with that issue as to the non-representation by counsel of Mr. French at a period that this Court will concede would be a critical stage in these proceedings.

The trial court, however, never explicitly addressed the issue of the absence of counsel, instead issuing a form order denying the motion for a new trial. *People v. Oliver French, Jr.,* Detroit Recorder's Court Docket # 94–010499, Order dated May 18, 1995.

Petitioner appealed his conviction to the Michigan Court of Appeals. Although the Michigan Court of Appeals found that defense counsel had not been present when the jury was re-instructed by the trial court and that a violation of petitioner's Sixth Amendment right to counsel had occurred, *People v. Oliver French, Jr.,* Michigan Court of Appeals Docket # 186834, pp. 4, 6, the Michigan Court of Appeals determined that automatic reversal of petitioner's conviction was not required and affirmed the conviction. The Michigan Supreme Court subsequently denied petitioner's application for leave to appeal on September 22, 1998. *People v. Oliver French, Jr.,* 584 N.W.2d 924 (1998).

Petitioner has now filed an application for a writ of habeas corpus. Because this Court is granting the writ, it will limit its discussion solely to the following issue:

DID THE RE–INSTRUCTION OF THE DEADLOCKED JURY, IN THE ABSENCE OF PETITIONER'S COUNSEL, VIOLATE PETITIONER'S RIGHT TO THE ASSISTANCE OF COUNSEL AT A CRITICAL

STAGE OF THE PROCEEDINGS, ENTITLING HIM TO THE ISSUANCE OF A WRIT OF HABEAS CORPUS?

## II. *STANDARD OF REVIEW*

Review of a state court's decision under 28 U.S.C. § 2254 is governed by the standards established by the Antiterrorism and Effective Death Penalty Act (hereinafter AEDPA), Pub.L. No. 104–132, 110 Stat. 1214 (Apr. 24, 1996). The Act altered the standard of review that a federal court must use for writs of habeas corpus. 28 U.S.C. § 2254(d) provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *Harpster v. State of Ohio*, 128 F.3d 322, 326 (6th Cir.1997); *cert den* —— U.S. ——, 118 S.Ct. 1044, 140 L.Ed.2d 109 (1998).

A federal court must apply the presumption of correctness to state court findings of fact for habeas corpus purposes unless convincing evidence is offered to rebut this presumption. *Warren v. Smith*, 161 F.3d 358, 360–361 (6th Cir.1998); 28 U.S.C. 2254(e)(1).

The United States Court of Appeals for the Sixth Circuit only recently adopted its own standard of review for habeas cases. In *Nevers v. Killinger*, 169 F.3d 352 (6th Cir.1999), the United States Court of Appeals for the Sixth Circuit indicated that the deference to the state courts' judgments required under the AEDPA would be achieved by adopting the rule that the unreasonableness of a state court's application of clearly established Supreme Court precedent will not be debatable among reasonable jurists if it is so offensive to existing precedent, so devoid of record support, or so arbitrary, as to indicate that it is outside the universe of plausible, credible outcomes. This new standard of review is an amalgam of the Fifth Circuit's standard of review, *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir.1996); *cert. den.* 520 U.S. 1107, 117 S.Ct. 1114, 137 L.Ed.2d 315 (1997), and the First Circuit's standard of review. *O'Brien v. Dubois*, 145 F.3d 16, 25 (1st Cir.1998).

## III. *DISCUSSION*

**A. The Michigan courts' finding that counsel was absent during the re-instruction of jury is entitled to the presumption of correctness.**

■ Respondent's position throughout the state court appellate process and now before this Court is that petitioner was not deprived of the assistance of counsel when the trial court re-instructed the jury because Mr. Ty Jones was present for the re-instruction of the jury. However, the trial court, in addressing petitioner's motion for a new trial, indicated that the issue of non-representation had some merit and further conceded that this would be a critical stage in the proceedings. On appeal, the Michigan Court of Appeals found that the jury was re-instructed by the trial court at a time when the prosecutor was present but defense counsel was not. *People v. Oliver French, Jr., supra* at 4. The Court of Appeals also acknowledged that there was a violation of petitioner's Sixth Amendment right to counsel, *People v. Oliver French, Jr.,* at 6, although the Court declined to reverse petitioner's conviction.

A federal court must apply the presumption of correctness to state court findings of fact for habeas corpus purposes unless convincing evidence is offered to rebut this presumption. *Warren v.. Smith,* 161 F.3d 358, 360–361 (6th Cir.1998); 28 U.S.C. 2254(e)(1). A state appellate court's findings of fact are also entitled to the presumption of correctness. *Martin v. Rose,* 744 F.2d 1245, 1252 (6th Cir.1984); *Smith v. Perini,* 723 F.2d 478, 480 (6th Cir.1983); *cert. den.* 466 U.S. 941, 104 S.Ct. 1920, 80 L.Ed.2d 466 (1984). Cases decided after the passage of the AEDPA have also applied the presumption of correctness to state appellate court findings of fact. *Bocian v. Godinez,* 101 F.3d 465, 467 (7th Cir.1996); *Bowles v. Berge,* 999 F.Supp. 1247 (E.D.Wis.1998). Additionally, when the record is ambiguous, a state appellate court's factual findings are deemed to be fairly supported by the record, and thus presumed correct, when later challenged in federal habeas corpus proceedings. *Palmer v. Estelle,* 985 F.2d 456, 459 (9th Cir. 1993); *cert. den.* 509 U.S. 928, 113 S.Ct. 3051, 125 L.Ed.2d 735 (1993). Finally, the presumption of correctness accorded by a federal habeas court to factual findings of a state court applies not only to a state court's express factual findings, but also to the implicit resolution of disputes that can fairly be inferred from the state record. *Armstrong v. Young,* 34 F.3d 421, 426 (7th Cir.1994); *cert. den.* 514 U.S. 1021, 115 S.Ct. 1369, 131 L.Ed.2d 224 (1995) (cites omitted).

■ In the present case, respondent has not offered any clear and convincing evidence to this Court to overturn the presumption that the Michigan Court of Appeals' finding that defense counsel was absent during the re-instruction of the jury was incorrect. Although at the beginning of trial, petitioner's attorney (Mr. Pitts) introduced Mr. Ty Jones as an attorney from California who was "temporarily" assisting with the defense, there is no indication from the record that Mr. Jones was ever admitted to practice *pro hac vice* in

Michigan by the trial court, as provided in Rule 15, § 2 of Rules Concerning the Michigan State Bar, nor did Mr. Jones ever question any witnesses, make any objections, or even place an appearance on the record. Indeed, when the jury was re-instructed by the trial court, there was no appearance placed on the record by anyone purporting to represent petitioner, and, while the trial court specifically addressed the prosecutor, she never spoke to anyone representing petitioner, nor were any contemporaneous objections to this instruction made by anyone representing petitioner, even though petitioner's attorney (Cornelius Pitts) had objected to a similar deadlocked jury instruction being given after the first note was received from the jury indicating that they were deadlocked. In light of the record presented from the state trial court concerning the re-instruction of the jury by the trial court, there is no evidence to show that Mr. Jones or anyone else was present on behalf of petitioner at that critical stage in the proceedings. Respondent has not presented any convincing evidence that the Michigan Court of Appeals' determination that counsel was not present when the jury was re-instructed should not be entitled to the presumption of correctness.

Respondent additionally contended at oral argument that the Michigan Court of Appeals never explicitly found that counsel was not present when the jury was re-instructed by the trial court. This contention is without merit. On page 4 of the opinion, the Michigan Court of Appeals stated that the court took up the jury's third note about being deadlocked "at a time when the prosecutor was present but defense counsel were not." This is an explicit finding that counsel was not present. Moreover, on page 6 of the opinion, the Michigan Court of Appeals concluded that petitioner's Sixth Amendment right to counsel had been violated. Even if this were not an express factual finding that counsel was absent for the re-instruction of the jury, the Court of Appeals' finding that the Sixth Amendment right to counsel

was violated was clearly an "implicit resolution of disputes that can fairly be inferred from the state record and would therefore be entitled as well to the presumption of correctness". *Armstrong v. Young,* 34 F.3d at 426.

This Court also notes that respondent conceded at oral argument conducted in this case that no one from the Wayne County Prosecutor's office showed up for oral argument at the Michigan Court of Appeals, to amplify or correct the state trial court record. Respondent also acknowledged that the prosecutor never filed an application for leave to appeal as cross-appellant with the Michigan Supreme Court, as allowed under M.C.R. 7.302(D)(2). Nor did respondent move for a rehearing in the Michigan Court of Appeals pursuant to M.C.R. 7.215(G)(1). Federal courts have held that, where a habeas petitioner did not challenge the facts set forth in the state appellate court's opinion affirming the conviction and sentence, the federal habeas court would presume the facts correct for purposes of reviewing the habeas petition. *United States ex. rel. Frierson v. Gramley,* 952 F.Supp. 578, 581 (N.D.Ill.1997). Because the State of Michigan never challenged the Michigan Court of Appeals' findings of fact either by way of a motion for rehearing in the Michigan Court of Appeals or by an application for leave to appeal as cross-appellant in the Michigan Supreme Court, this Court will presume that the Michigan Court of Appeals' finding that petitioner's counsel was absent during the re-instruction of the jury was a correct determination.

**B. The Michigan Court of Appeals' holding that the absence of counsel at a critical stage of the proceedings did not entitle Petitioner to automatic reversal of his conviction is contrary to, or an unreasonable application of, current federal law as determined by the United States Supreme Court.**

■ The Michigan Court of Appeals' determination that petitioner was not enti-

tled to the automatic reversal of his conviction because of the absence of his counsel during the re-instruction of the jury is contrary to, or an unreasonable application of, current Federal law as determined by the United States Supreme Court. Petitioner is therefore entitled to the issuance of a writ of habeas corpus.

The Sixth Amendment right to the assistance of counsel is made obligatory upon the states by the Due Process clause of the 14th Amendment. *Gideon v. Wainwright,* 372 U.S. 335, 342–344, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). The presumption that counsel's assistance is essential requires a court to conclude that a trial is unfair if the accused is denied counsel at a critical stage of the trial. *United States v. Cronic,* 466 U.S. 648, 659, 104 S.Ct. 2039, 80 L.Ed.2d 657, 80 L .Ed.2d 657 (1984); *See also Penson v. Ohio,* 488 U.S. 75, 88, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988). The United States Supreme Court has routinely found constitutional error without any specific showing of prejudice to a defendant when counsel is either totally absent, or prevented from assisting the accused during a critical stage of the proceedings. *United States v. Cronic,* 466 U.S. at 659, fn. 25, 104 S.Ct. 2039; *United States v. Minsky,* 963 F.2d 870, 874 (6th Cir .1992). The existence of certain structural defects in a trial, such as the deprivation of the right to counsel, requires automatic reversal of the conviction because it infects the entire trial process. *Brecht v. Abrahamson,* 507 U.S. 619, 629–630, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993). In certain Sixth Amendment contexts, prejudice from the deprivation of counsel is so likely that a case-by-case inquiry into prejudice is not worth the cost. *Strickland v. Washington,* 466 U.S. 668, 692, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Other cases have also held that reversal of a criminal conviction is automatic whenever a defendant is deprived of the assistance of counsel during a critical stage of the proceedings, particu-

larly in the prosecution of a capital offense. *Holloway v. Arkansas,* 435 U.S. 475, 489, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978).

Numerous courts have applied the automatic reversal standard in cases where a criminal defendant was deprived of the assistance of counsel at a critical stage. *See Green v. Arn,* 809 F.2d 1257, 1263 (6th Cir.1987); rem oth gds, 488 U.S. 1034, 109 S.Ct. 847, 102 L.Ed.2d 979 (1989) reaffirmed 839 F.2d 300 (1988) (*Cronic* rule of automatic reversal applies when counsel is absent during the taking of evidence); *United States v. Minsky,* 963 F.2d at 874 (reversal automatic when counsel excluded from a sidebar conference); and *Carter v. Sowders,* 5 F.3d 975, 979 (6th Cir.1993) (reversal automatic when counsel absent from a pre-trial deposition). These cases clearly show that the automatic reversal rule enunciated by the United Supreme Court in *Cronic* has been consistently applied in various situations where a criminal defendant was deprived of the assistance of counsel at a critical stage in the proceedings. Additionally, although a harmless error standard of review is appropriate in some instances where counsel is absent, there are some stages in the trial where the deprivation, by its very nature, cannot be deemed harmless. *Green v. Arn,* 809 F.2d at 1263; (citing *Rushen v. Spain,* 464 U.S. 114, 117 fn. 2, 104 S.Ct. 453, 455, 78 L.Ed.2d 267 (1983)).

Jury deliberations and the return of a jury verdict constitute critical stages of criminal proceedings for purposes of the Sixth Amendment. *Siverson v. O'Leary,* 764 F.2d 1208, 1214 (7th Cir.1985); *United States v. Smith,* 411 F.2d 733, 736 (6th Cir.1969). Courts have indicated that a harmless error standard may be appropriate where a jury verdict is accepted in the absence of counsel. *United States v. Osterbrock,* 891 F.2d 1216, 1218 (6th Cir. 1989); *See also Siverson v. O'Leary,* 764 F.2d at 1217. However, the giving of additional jury instructions from a judge to a jury, without notifying a defendant or his or her counsel, is not deemed harmless

error. *Rushen v. Spain,* 464 U.S. at 119, fn. 4, 104 S.Ct. 453 (quoting *Rogers v. United States,* 422 U.S. 35, 38–40, 95 S.Ct. 2091, 2094–2095, 45 L.Ed.2d 1 (1975)).

In *Curtis v. Duval,* 124 F.3d 1 (1st Cir.1997), the United States Court of Appeals for the First Circuit was confronted with the same situation that is before this Court, namely, giving of supplemental instructions to the jury without trial counsel being present. The First Circuit Court of Appeals found that the giving of a *sua sponte* jury instruction without consulting with, and in the absence of defense counsel, denied the defendant the assistance of counsel at a critical stage of the proceedings. Although the deprivation was of short duration, the Court of Appeals determined that it occurred during "a vital point in the trial and was, within its limits, total." *Curtis,* at 4–5. The Court in *Curtis* declined to grant habeas relief to the petitioner solely because his conviction had become final in 1983, one year before *Cronic* was decided. *Id.* at 6. However, the First Circuit indicated that, if it were to apply *Cronic* and its progeny, reversal would be required. *Id.*

The sole difference between petitioner and the defendant in *Curtis* redounds to the benefit of petitioner, namely, the fact that his conviction occurred in state court eleven years after the ruling in *United States v. Cronic,* seven years after the United States Supreme Court re-affirmed this principle in *Penson v. Ohio,* and two years after the United States Supreme Court reaffirmed the principle that the absence of counsel requires automatic reversal in *Brecht v. Abrahamson.* At the time of petitioner's conviction, the clearly established federal law, as determined by the United States Supreme Court, was that the denial or absence of counsel at a critical stage in the criminal proceedings entitled a defendant to automatic reversal of the conviction, without any further inquiry to determine prejudice. Moreover, the United States Supreme Court had clearly indicated that the giving of addi-

tional instructions by a judge to a jury in the absence of counsel would not be considered harmless error. *Rushen v. Spain,* 464 U.S. at 119, n. 4, 104 S.Ct. 453; *Rogers v. United States,* 422 U.S. at 38–40, 95 S.Ct. 2091. The Michigan Court of Appeals' determination that petitioner was not entitled to the automatic reversal of his conviction where counsel was absent when the jury was re-instructed by the trial court judge was contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. As such, petitioner has established that he is entitled to the issuance of a writ of habeas corpus.

The cases cited by respondent do not support her position that the decision by the Michigan Court of Appeals was reasonable. In the *Rushen* case, the United States Supreme Court merely held that an unrecorded *ex parte* communication between a judge and a juror can be harmless error. As already indicated by this Court, the Supreme Court in *Rushen* also stated that it would not be harmless error for a trial court judge to give supplemental instructions to a jury in the absence of counsel.

The case of *Vines v. United States,* 28 F.3d 1123, 1127–1128 (11th Cir.1994), which respondent brought to this Court's attention at oral argument, merely states that a defendant is not entitled to a presumption of prejudice based upon a brief absence of counsel during one day of the trial *where it does not occur at a critical stage of the trial. Id.* at 1128 (emphasis added). The *Vines* court merely reasserted the principle enunciated in *Cronic* and noted that, to establish the presumption of prejudice from counsel's absence for a brief period during trial, a defendant must also establish that counsel was denied at a critical stage in the proceedings. The *Vines* court concluded that the defendant was not deprived of the assistance of counsel when the defense attorney was absent during a period of the trial where evidence was being presented against the codefendants.

By contrast, petitioner here has clearly established that he was deprived of the right to the assistance of counsel during a critical stage of the trial, namely, the trial court's re-instruction of a jury that had on three separate occasions indicated to the court that it was hopelessly deadlocked. Although this "deprivation was short-lived, it occurred during a vital point in the trial and was, within its terms, total." *Curtis v. Duval,* 124 F.3d at 4–5. Because petitioner was deprived of the assistance of counsel during a critical stage of the proceedings, reversal of his conviction is automatic. The Michigan Court of Appeals' failure to apply *Cronic* or its progeny, let alone to mention any of these cases in its holding, was an unreasonable application of clearly established federal law. Petitioner is therefore entitled to the issuance of a writ of habeas corpus.

■ Although automatic reversal of petitioner's conviction is required because he was deprived of the assistance of counsel during a critical stage of the proceedings in the state court, this Court also agrees with petitioner that he would be entitled to the issuance of a writ of habeas corpus because the Michigan Court of Appeals did not even apply a harmless error analysis in determining whether the same result in this case would have been reached had counsel been present during the re-instruction of the jury. Before a federal constitutional error which is not a structural error can be held harmless beyond a reasonable doubt, the reviewing court must be able to declare a belief that the error was harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Another judge in the Eastern District of Michigan has concluded that the AEDPA, if applied, would not preclude federal ha-

beas relief where a state court failed to apply the *Chapman* harmless error standard. *Barker v. Yukins,* 993 F.Supp. 592, 602–603 fn. 7 (E.D.Mich.1998) (Rosen, J.); citing *Jeffries v. Wood,* 114 F.3d 1484, 1500–1501 (9th Cir.1997).

Subsequently, the United States Court of Appeals for the Sixth Circuit, in affirming the granting of a writ of habeas corpus in another case, did so in part based on its conclusion that the Michigan Supreme Court's application of the *Chapman* harmless error standard to the particular facts in that case was not reasonable. *Nevers v. Killinger,* 169 F.3d 352, 371(6th Cir.1999).

As petitioner notes, the Michigan Court of Appeals never applied the *Chapman* harmless error analysis in determining whether trial counsel's absence was harmless beyond a reasonable doubt. Instead, the Michigan Court of Appeals simply analyzed the trial court's instruction and determined that it was not unduly coercive. Even if the error complained of by petitioner was subject to a harmless error analysis, this Court would still grant the writ based upon the Michigan Court of Appeals' failure to employ the *Chapman* harmless error standard in determining whether reversal was required. Nonetheless, because petitioner was deprived of the assistance of counsel during a critical stage in the proceedings, reversal of his conviction is automatic, and a harmless error standard would simply be inapplicable.

## IV. *CONCLUSION*

Because petitioner was deprived of the assistance of counsel during a critical stage in his state criminal trial, reversal of his conviction is automatic. The Michigan Court of Appeals' failure to automatically reverse petitioner's conviction was based upon an unreasonable application of clearly established federal law. Petitioner is entitled to the issuance of a writ of habeas corpus. Because this Court is granting petitioner the writ based upon counsel's absence during a critical stage of the criminal proceedings, this Court concludes that it is unnecessary to determine whether the jury instruction given by the trial judge in the absence of counsel was unduly coercive.

## V. *ORDER*

IT IS HEREBY ORDERED THAT PETITIONER'S APPLICATION FOR WRIT OF HABEAS CORPUS IS CONDITIONALLY GRANTED. UNLESS THE STATE TAKES ACTION TO AFFORD PETITIONER A NEW TRIAL WITHIN NINETY (90) DAYS OF THE DATE OF THIS OPINION, HE MAY APPLY FOR A WRIT ORDERING RESPONDENT TO RELEASE HIM FROM CUSTODY FORTHWITH.

## *JUDGMENT*

The above entitled matter having come before the Court on a Petition for Writ of Habeas Corpus, Honorable Arthur J. Tarnow, a United States District Judge, presiding, and in accordance with the Memorandum Opinion and Order entered on March 25, 1999.

IT IS ORDERED AND ADJUDGED that the Petition for Writ of Habeas Corpus be, and the same hereby is, **CONDITIONALLY GRANTED.**