State of WISCONSIN ex rel. Stephen TOLIVER, Petitioner,

v.

Gary R. McCAUGHTRY, Respondent.

No. 98–C–1041.

United States District Court,
E.D. Wisconsin.

Nov. 9, 1999.

964

Kathryn A. Keppel, Milwaukee, WI, for Petitioner.

Stephen W. Kleinmaier, Madison, WI, for Respondent.

## DECISION AND ORDER

ADELMAN, District Judge.

Stephen Toliver petitions for a writ of habeas corpus under 28 U.S.C. § 2254. He challenges his conviction of first degree intentional homicide (as a party to the crime), which was entered by Judge John DiMotto on March 16, 1992, in Milwaukee County Circuit Court following a jury trial and guilty verdict. Petitioner claims that (1) he was denied the effective assistance of appellate counsel when his counsel was allowed to withdraw and no other attorney was substituted for her, (2) the trial court's refusal to instruct the jury on the lesser included offense of felony murder violated his rights to due process and a fair trial, (3) he was denied his Sixth Amendment right to cross-examine a prosecution witness because the state misrepresented promises it made to that witness in exchange for testimony, and (4) the admission of a hearsay statement made by his brother was error.

### I. FACTUAL BACKGROUND[1]

Petitioner's conviction arose out of the shooting death of 24–year–old Tina Rogers

1. The following facts are a compilation of those recited by the Wisconsin Court of Appeals in its decision affirming Toliver's conviction, (see R. 5 Ex. G (Decision of 5/10/94)), as required by the Anti–Terrorism and Effective Death Penalty Act, and those discussed by the parties in their briefs, referencing the trial

in a home at 2918 North 37th Street in Milwaukee. Rogers's body was found by a pedestrian on May 15, wrapped in plastic garbage bags and dumped along West Lincoln Creek Parkway in Milwaukee. The autopsy of her body revealed that she had been shot at least twice. There were two entry wounds in the head: one bullet entered the back and another entered the left forefront. A bullet wound in her right hand could have been caused by either of the shots if Rogers held her hand up or by a third shot. In the opinion of the medical examiner who performed the autopsy the wound to the back of Rogers's head likely caused near instantaneous death, and there was a high potential of death from either of the two wounds. A picture of Rogers was found between her buttocks, secured with duct tape.

Petitioner's brother, Oliver Toliver ("Oliver"), fired the shots that killed Rogers. Also present at the scene of the shooting were Commosie Thompson, Corey Henry, Darian Robinson and Jo'Etta Foster. The four latter persons all testified at trial, as did petitioner. To say that the story they relayed was not pleasant is an understatement.

At about noon on May 12, 1991, Thompson discovered he was missing $1,800 in drug sales revenues. He paged petitioner, who helped Thompson sell drugs. In response to the page, Toliver, Foster and Oliver met Thompson at the upper-flat residence at 2918 North 37th Street, where petitioner, Foster, Thompson, and Rogers lived together. Foster testified that as they were going home petitioner said Rogers had taken the money.

At the house, petitioner told Oliver to "strap up." (R. 5 Ex. FF at 31–32.) Petitioner and Oliver each then grabbed a gun and went to look for Rogers. They found her around 4:00 p.m. and brought her back to the house; in addition to Foster and

record. The accounts of the Wisconsin Court of Appeals and the parties' briefs differ only in the level of detail and in the addition of facts relevant to Toliver's current issues, which were not before the appellate court on direct appeal.

Thompson, Henry and Robinson were at the residence when Toliver and Oliver returned. Petitioner and Rogers argued; petitioner accused her of taking the money but she denied it. Oliver, who carried a Tech 9 firearm, then moved toward Rogers, but petitioner pushed him away. Henry said petitioner told Oliver to "chill out and sit down." (R. 5 Ex. FF at 17.)

Toliver threw his gun next to Thompson and said something to the effect that Thompson should shoot whomever he thought took the money. Thompson just sat there scared. Petitioner then asked Thompson either what he wanted done or "what's up." (R. 5 Ex. FF at 35; R. 5 Ex. GG at 49.) Thompson answered "whatever is clever." (R. 5 Ex. FF at 35; see R. 5 Ex. GG at 49.) Robinson said Toliver then asked Thompson whether he was sure.

According to Thompson, petitioner then moved back. Rogers said, "No, Steve," or "Oh, No." (R. 5 Ex. GG at 20.) Oliver then stepped forward and shot Rogers—who was holding her hands in front of her face—in the forehead, and Rogers slumped to the floor. Thompson said petitioner had not tried to stop Oliver.

After the shot, Thompson, Henry, and Robinson fled the room and ran down the stairs and outside. As he ran Thompson heard petitioner say, "kill that bitch, kill her." (R. 5 Ex. FF at 36.) Robinson heard petitioner say "kill the bitch." (R. 5 Ex. GG at 56, 57, 61.) A second shot then rang out.

Foster was in a bedroom when she heard the first gunshot. She ran to the bedroom door and saw Rogers slumped on the floor bleeding, with petitioner and Oliver standing over her. She heard petitioner say, "shoot the bitch," and Oliver fired the second shot.[2] (R. 5 Ex. GG at 80.)

2. At trial, petitioner testified that after Oliver shot Rogers petitioner had actually stated "you done killed the bitch." (R. 5 Ex. II at 44.)

According to Foster, petitioner told her to clean up the blood, and petitioner and Oliver covered Rogers's body with plastic lawn bags, taping them shut. Petitioner and Oliver ultimately dumped Rogers's body along West Lincoln Creek Parkway.[3] The day after the shooting, petitioner told Thompson he had taped Rogers's picture to her buttocks, and Foster thereafter did not see the picture of Rogers that had been in the house.

At trial, Foster related a statement made by Oliver the day after the murder regarding why he shot Rogers:

Q: In the presence of Stephen Toliver, the next day, did Oliver Toliver tell you why he shot Tina Rogers?

A: Yes. Because he would do anything for his brother, Steve, Carey, and his mother.

(R. 5 Ex. GG at 122.) Toliver's objection to admission of the statement was overruled; the statement was deemed a statement of a coconspirator during the course of and in furtherance of the conspiracy as well as an adopted admission. (*See* R. 5 Ex. GG at 117.)

At trial, prosecution witness Henry testified that no one had agreed to make any recommendations in return for his testimony and that he had to serve a mandatory three years in prison in another case. According to Toliver, however, the state had already agreed to recommend a sentence of two to three years incarceration. Further, according to Toliver, at sentencing Henry's prosecutor actually stood silent regarding Henry's sentence and Toliver's prosecutor recommended leniency due to Henry's cooperation in Toliver's case. Henry ended up on probation with no incarceration.

**3.** Petitioner testified that they dumped Rogers's body on Lincoln Memorial Parkway (a/k/a Lincoln Memorial Drive), but the pedestrian who found the body indicated that she discovered it along a different street—West Lincoln Creek Parkway.

## II. PROCEDURAL HISTORY

After the jury's guilty verdict, the trial court, on March 16, 1992, sentenced Toliver to life imprisonment with a parole eligibility date of December 14, 2045. On April 1, 1992, Donna L. Hintze, an assistant state public defender, was appointed to represent Toliver in post-conviction and appellate proceedings.

Hintze met with petitioner once, on October 28, 1992. The next day she filed a motion in the Wisconsin Court of Appeals to withdraw as petitioner's counsel. The motion stated, in total:

Defendant, Stephen Toliver, by his attorney, Donna L. Hintze, Assistant State Public Defender, hereby moves the court to permit her to withdraw as counsel in the above-captioned case. The grounds for the motion are as follows:

1. Undersigned counsel was appointed on April 1, 1992, to represent Mr. Toliver in any post-conviction proceedings arising from his conviction for party to a crime first-degree intentional homicide.

2. Counsel reviewed the transcripts and court file and met with Mr. Toliver to discuss his case with him on October 28, 1992. At that time Mr. Toliver advised counsel that he did not wish to have her represent him and that he wished to proceed *pro se*. Accordingly he asked that counsel request permission to withdraw from his case.

WHEREFORE, it is respectfully requested that the court allow counsel to withdraw from further representation of Mr. Toliver and permit him to proceed *pro se*.

Dated this 29th day of October, 1992. (R. 5 Ex. D attachment (Motion to Withdraw as Counsel).) No affidavit by Hintze accompanied the motion.[4]

**4.** In fact, someone else even signed the motion on her behalf.

Meanwhile, on October 28 after his meeting with Hintze petitioner wrote and sent at least three letters. The first was addressed to Milwaukee County Circuit Court Judge Patrick Sheedy. Petitioner indicated in the letter that he agreed with Hintze's request to withdraw because she refused to raise the issue of ineffective assistance of trial counsel; petitioner also requested, however, the appointment of an attorney to replace Hintze. Because the exact content of Toliver's letter is important, I quote its substance in full:

> Please take notice to the enclosed letter in regards to my request for new appellate counsel. I am not a lawyer, and it would be a miscarriage of justice if this defendant had to represent himself in his first appeal before the trial court. State Public Defender Donna L. Hintze, has requested to withdraw, and I agree because she refuses to request a evidentiary hearing for ineffective asst. of trial counsel so that this defendant can raise all of his issues at once, and prevent having to piece meal. I would hope you could intervene, and request that this defendant be given new appellate counsel to present my issues before the trial court. Again I am not a lawyer, and would like new counsel appointed. Thank you.

(R. 5 Ex. L at 1.)

Attached to Toliver's letter to Judge Sheedy was the second letter, addressed to Mark Lukoff as director of the State Public Defender's Milwaukee office (it is unclear to me whether this was a carbon copy or whether Toliver wished Judge Sheedy to forward the letter to Lukoff). The letter similarly starts with: "This letter is to request new counsel to represent me in my first appeal. . . ." (R. 5 Ex. L at

2.) After noting his disagreement with Hintze regarding the issues to be pressed post-trial and on appeal, Toliver continued: "I'm entitled to effective appellate counsel in my first appeal. . . . I'm requesting appointment of new appellate counsel to represent me at evidentiary hrg., and all other appellate procedures necessary." (*Id.*) Further, he complained that Hintze had not done research on his case. (*Id.* at 3.) He concluded: "[Hintze] has requested to withdraw from my case, and I agree should, but at the same, I'm in need of new appellate counsel." (*Id.*)

Toliver's third letter dated October 28, 1992 was addressed to the clerk of court at the criminal division of the Milwaukee County Circuit Court, advising that Hintze no longer represented him and that he was proceeding pro se in his post-conviction matters. Toliver made no reference to any request for substitute counsel, instead indicating that he himself would need certain documents and assistance and that his wife might file some documents on his behalf. He concluded: "Again, Attorney Donna Hintze, has requested to withdraw from my case, and I await the Court of Appeals decision to her request, and if her request is granted which I think it will be, then I begin to send my motions pro se[.]" (R. 5 Ex. M at 2.)

The Wisconsin Court of Appeals also received a letter dated October 28, although it is unclear to me whether this was a fourth letter or merely one of the prior letters forwarded to the appellate court.[5] Regardless, the Wisconsin Court of Appeals received a letter from Toliver on November 3, 1992. (*See* R. 13 Ex. C at 2 (Decision of 2/26/96) (acknowledging receipt on November 3 of Toliver's "letter to

---

5. The letter is referenced and quoted in a February 26, 1996 Wisconsin Court of Appeals decision, and a photocopy of a letter dated October 28, 1992, addressed to the Wisconsin Court of Appeals clerk and having text matching that quoted by the Wisconsin Court of Appeals is an attachment to Exhibit I attached to respondent's answer. At the end of the letter attached to Exhibit I Toliver wrote:

"[T]his is not my wish to proceed pro se,! I'm requesting appointment of counsel to represent me as I'm not a lawyer. . . ." The parties have not given me separate confirmation, however, that the letter attached to Exhibit I is indeed the same letter received by the Wisconsin Court of Appeals, so I will not rely on it.

this court" dated October 28).) In the letter Toliver requested appointment of new counsel, noting that Hintze had requested to withdraw, and asked the court to forward his request to the state public defender. (*See id.* (summarizing letter).)

On November 3, 1992—the same day it received Toliver's letter and only three business days following the filing of Hintze's motion [6]—, without holding any hearing or inquiring further with Toliver, the Wisconsin Court of Appeals granted Hintze's motion to withdraw, concluding based upon Hintze's representations that "good cause is shown." (R. 5 Ex. D attachment (Order of 11/3/92); R. 5 Ex. E at 101–02.) The court of appeals referred petitioner's letter request for new appellate counsel to the State Public Defender ("SPD") on November 10. The SPD filed a report with the court of appeals on November 17, indicating that it would not appoint a new attorney because the court of appeals had relieved Hintze as counsel and the SPD's office had "satisfied its obligations to Mr. Toliver when it appointed Ms. Hintze. Mr. Toliver is not entitled to appointment of another lawyer by this office." (R. 5 Ex. E at 105.) The court of appeals accepted the public defender's report the next day, November 18.

On November 19, 1992, Toliver sent to the Wisconsin Court of Appeals another motion for appointment of new counsel; the letter was received November 24. (*See* R. 13 Ex. C at 4 (discussing letter).) In that letter petitioner objected to the grant of Hintze's motion for withdrawal by the court "without giving this defendant an opportunity to be heard. . . ." Toliver stated in the motion that he had not sought Hintze's withdrawal and that it was Hintze's desire because she did not wish to pursue certain issues Toliver wanted raised. (*See id.;* R. 5 Ex. D attachment (Appointment of New Counsel).) Toliver cited the United States Supreme Court's decision in *Evitts v. Lucey,* 469 U.S. 387,

105 S.Ct. 830, 83 L.Ed.2d 821 (1985), and complained that it would be "a travesty of justice if this defendant is denied new appellate counsel." (*Id.*) According to the Wisconsin Court of Appeals, this was the first time Toliver declared that he had not sought Hintze's withdrawal. (R. 13 Ex. C at 4.) The court of appeals denied his request on December 1, 1992 because the public defender had already denied him substitute counsel. (*See id.;* R. 5 Ex. E at 108–09.)

On January 19, 1993, and April 14, 1993, the court of appeals denied additional requests by Toliver for appointment of counsel, once referring back to the SPD's November 17 report and once stating that Toliver offered no new reasons for appointment of counsel. The court also denied an April 19, 1993 motion for reconsideration, in which Toliver cited *Evitts* and *Douglas v. California,* 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963).

Consequently, petitioner proceeded pro se. On appeal he argued that (1) the evidence was insufficient to sustain his conviction, (2) deficiencies in the arraignment denied him due process of law, (3) the trial judge denied him a fair trial by refusing to recuse himself, (4) the prosecutor was guilty of misconduct, (5) his trial counsel was ineffective, and (6) the denial of his request for appellate counsel was error.

On May 10, 1994, the Wisconsin Court of Appeals rejected petitioner's arguments and affirmed the conviction. The court's findings on and rejection of Toliver's claim that he was unconstitutionally denied appellate counsel read in full:

> Toliver asserts his right to appointed appellate counsel was violated and that this court erred by failing to order the State Public Defender (SPD) to appoint an attorney for him for post-conviction motion hearing and for this appeal. The record shows that the SPD appointed

---

**6.** I take judicial notice from my calendar that October 31, 1992 was a Saturday and November 1, 1992 was a Sunday.

Attorney Donna L. Hintze to represent Toliver on these matters. On November 3, 1992, this court granted Hintze's motion to withdraw as appellate counsel upon her statement that she examined the record and transcripts, met with Toliver and discussed the case, and that he stated that he did not desire her representation and that he would proceed *pro se*. On November 10, this court referred another request for counsel to the SPD, pursuant to § 977.05(4)(g), STATS., for determination of indigency and for determination of appointment of an attorney in the post-conviction matter. On November 17, the SPD filed a Report to the Court stating that it would not appoint another lawyer for Toliver because this court permitted Hintze to withdraw and authorized Toliver to proceed *pro se*. On November 18, this court accepted the SPD Report for filing. On December 1, this court denied another motion by Toliver for appointment of counsel, noting the SPD's previous consideration of a previous request. On April 14, 1993, this court denied Toliver's third request for appointment of appellate counsel.

On November 3, 1992, upon Toliver's refusal of Hintze's representation, the court permitted her to withdraw and honored Toliver's preference to proceed *pro se*. Toliver did not address a second request to the SPD, but to this court. We referred it to the SPD which denied the request because of Toliver's representation that he would proceed *pro se*. We conclude that Toliver's rights were not compromised because of his agreement to proceed *pro se*.

(R. 5 Ex. G at 15–16 (footnote omitted).) Petitioner sought review from the state supreme court, but his petition was denied.

Subsequently, petitioner obtained counsel. On February 13, 1996, pursuant to *State v. Knight*, 168 Wis.2d 509, 522, 484 N.W.2d 540 (1992), Toliver filed a petition for writ of habeas corpus in the Wisconsin Court of Appeals, again asserting that he was denied the effective assistance of appellate counsel. The court of appeals re-cited the sequence of events following Toliver's meeting with Hintze then denied the petition *ex parte* on February 26, holding first that petitioner knew and approved of Hintze's motion to withdraw as his counsel:

> The record shows that Toliver knew Attorney Hintze intended to withdraw prior to entry of an order by this court regarding Attorney Hintze's representation. Despite his knowledge that Attorney Hintze was moving to withdraw, Toliver filed no immediate objection to that withdrawal. He did not ask this court or the public defender to require Attorney Hintze to continue representing him, but instead he sought appointment of new post-conviction counsel from the public defender's office. He filed no immediate objection to this court's order granting Attorney Hintze's withdrawal motion. It was only after the public defender declined to appoint new counsel that Toliver objected to Attorney Hintze's withdrawal.

(R. 13 Ex. C at 5–6.) Second, the court of appeals noted that it had already decided petitioner's claim of ineffective assistance of appellate counsel on his direct appeal; the matter did not need to be revisited because Toliver made the same arguments and produced no new information on the matter. Third, the court found that Toliver waited too long—almost two years after the resolution of his direct appeal and over three years after Hintze's withdrawal—before bringing his *Knight* petition. The state supreme court denied Toliver's petition for review.

On September 26, 1996, petitioner filed a habeas petition in federal court, which was assigned to Judge Myron L. Gordon of this district. Petitioner presented the four issues he raises in the present petition. Judge Gordon promptly dismissed the petition, finding that Toliver had failed to exhaust available state court remedies as to three of the claims raised; the only ground petitioner had exhausted was that regarding the denial or ineffectiveness of

appellate counsel. *See State ex rel. Toliver v. McCaughtry,* No. 96–C–1117, slip op. (E.D.Wis. Nov. 8, 1996).

Petitioner thereafter, on February 24, 1997, filed a post-conviction motion pursuant to Wis.Stat. § 974.06 seeking relief on the three unexhausted claims. On February 28, 1997, the state trial court denied the motion based on *State v. Escalona–Naranjo,* 185 Wis.2d 168, 181–82, 517 N.W.2d 157 (1994), which held that issues not raised on direct appeal or in a post-conviction motion made right after a conviction (pursuant to Wisconsin Statute § 974.02) are barred from later consideration in post-conviction proceedings (pursuant to Wis.Stat. § 974.06) in the absence of a sufficient reason for not having raised them in the previous proceeding. Petitioner appealed.

While the appeal was pending petitioner became concerned that under the one-year limitations period contained in the new Anti–Terrorism and Effective Death Penalty Act ("AEDPA"), which went into effect on April 24, 1996, he might lose his right to bring a federal habeas petition. Therefore, notwithstanding the pending appeal, Toliver filed another federal habeas petition in this district on April 22, 1997. Judge Rudolph T. Randa dismissed the petition on July 16, 1997 for failure to exhaust available state remedies, pointing out that under AEDPA the one-year limitation period would be tolled during the period in which petitioner's motion for post-conviction review in state court was pending.

The state court of appeals eventually affirmed the denial of petitioner's § 974.06 motion on June 8, 1998, and the state supreme court denied his request for review on August 21, 1998. On October 19, 1998, petitioner filed the present petition for federal habeas relief. The parties have now briefed the issues raised in the petition. Respondent admits that petitioner has now exhausted all state remedies. (Answer ¶ 6.)

## III. PRELIMINARY CONSIDERATIONS

### A. Procedural Default

 While it is clear that three of the claims currently before me were denied by the state courts on procedural grounds, Toliver faces no problem of procedural default. In holding that these three claims were barred from consideration in a § 974.06 motion, the state courts relied solely upon *Escalona–Naranjo,* a case decided subsequent to Toliver's direct appeal and which overturned prior Wisconsin law. When a state court declines to review an issue because the issue was improperly preserved, the state court decision must rest upon a state law ground that is both "independent of the federal question and adequate to support the judgment." *Coleman v. Thompson,* 501 U.S. 722, 729, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Bowles v. Berge,* 999 F.Supp. 1247, 1253 (E.D.Wis. 1998). In *Liegakos v. Cooke,* 106 F.3d 1381 (7th Cir.1997) (*"Liegakos I "*), the Seventh Circuit held that while a Wisconsin court's retroactive application of *Escalona–Naranjo* is Constitutionally permissible and independent it cannot serve as an adequate state law ground for finding procedural default. Only a procedural rule in force at the time of the acts done or omitted by the defendant/petitioner "establishes the sort of 'independent and adequate state ground' that blocks collateral review under § 2254." *Liegakos v. Cooke,* 108 F.3d 144, 145 (7th Cir.1997) (*"Liegakos II "*) (on petitions for rehearing describing holding of *Liegakos I* ); *see also Moore v. Parke,* 148 F.3d 705, 709 (7th Cir.1998) ("A state law procedural rule is not adequate to prevent federal review if the petitioner could not have been 'deemed to have been apprised of [the rule's] existence' at the time he omitted the procedural step in question.") (citing *NAACP v. Alabama ex rel. Patterson,* 357 U.S. 449, 457, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958)). Thus the rule of *Escalona–Naranjo* does not prevent Toliver from raising the three claims in this federal habeas petition.

## B. Standard of Review to Apply

■ A second preliminary question is whether the new, higher standards of review enacted as a part of AEDPA apply to this case in whole or part. Prior to AEDPA, federal courts were able to review plenarily a state court's application of federal law to the particular facts of a case, and could rely upon any federal precedent. *See Abrams v. Barnett*, 121 F.3d 1036, 1037–38 (7th Cir.1997). But AEDPA amended the law "by requiring federal courts 'to give greater deference to the determinations made by state courts than they were required to do under the previous law.'" *Bowles v. Berge*, 999 F.Supp. 1247, 1254 (E.D.Wis.1998) (quoting *Emerson v. Gramley*, 91 F.3d 898, 900 (7th Cir.1996)). As amended by AEDPA, the habeas statutes now allow federal courts to grant habeas relief only if the state courts' denial ·of relief "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d); [7] *see Schaff v. Snyder*, 190 F.3d 513, 522 (7th Cir.1999) ("We may no longer rely upon our own precedent or that of other circuit courts of appeals to grant the writ. A petitioner must have a Supreme Court case to support his claim, and that Supreme Court decision must have clearly established the relevant principle as of the time of his direct appeal.") (citation omitted).

■ By the terms of the statutory amendments, however, these new standards apply only to a "claim that was adjudicated on the merits in State court proceedings." 28 U.S.C. § 2254(d); *see*

*also Moore*, 148 F.3d at 708 ("A prerequisite for applying [§ 2254(d)] is that the state court adjudicated the issue before us on the merits."). Respondent vigorously argues that the revised § 2254(d) applies, but he is incorrect—at least in part. In *Liegakos I*, 106 F.3d at 1385, the Seventh Circuit held that if Wisconsin courts rely solely on *Escalona–Naranjo's* procedural grounds for denial of a § 974.06 motion regarding an issue that was not raised in prior proceedings, there has been no determination "on the merits in State court proceedings" as described in 28 U.S.C. § 2254(d). Thus the prior, more lenient standard of review applies in such cases.

This holding of *Liegakos I*, however, applies only to the three claims the Wisconsin state courts have deemed procedurally barred. The first of petitioner's four claims—that of the denial of appellate counsel—was indeed adjudicated on the merits and respondent is correct that the higher standard applies to it. The same situation was presented in *Liegakos I* — one of Liegakos's arguments had been presented on direct appeal and the remainder had been denied in the state courts pursuant to retroactive application of *Escalona–Naranjo*—and the Seventh Circuit applied the amended § 2254(d)(1) to the first issue alone. *See Liegakos I*, 106 F.3d at 1387. Thus, to obtain relief on this denial of appellate counsel claim, Toliver, like Liegakos, "must show that the decision 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" *Id.* (quoting 28 U.S.C. § 2254(d)(1)).

Petitioner argues weakly that the new AEDPA standards do not apply even to

7. Section 2254(d) reads in full:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

this claim because his conviction and direct appeal preceded passage of AEDPA and he thus had a one-year grace period before it took effect. According to Toliver, he twice tried to file this habeas case during that time period but was thwarted in securing consideration under the old law, and so for equitable reasons should be entitled to application of the old law nonetheless.

▉ Petitioner's argument is off-base. Those whose convictions predated AEDPA indeed were given a year after its enactment on April 24, 1996—i.e. until April 23, 1997—within which to *file* their habeas petitions. *See Young v. United States,* 124 F.3d 794, 796 (7th Cir.1997); *see also Lindh v. Murphy,* 96 F.3d 856, 866 (7th Cir.1996) (en banc), *rev'd on other grounds,* 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). This one-year grace period, however, was simply a statute of limitations date, not any extension of the *effective date* of the statute. AEDPA went into effect on April 24, 1996, and the amendments to subsection 2254(d) apply to all habeas petitions filed on or after that date, regardless of how the statute of limitations period operates. *See Lindh v. Murphy,* 521 U.S. 320, 322–23, 335, 336, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997) (at 335 stating that the amendments "unquestionably apply ... to cases filed after the Act took effect"); *Schaff,* 190 F.3d at 521 (AEDPA "applies to this case because Mr. Schaff filed his federal habeas petition after the effective date of AEDPA, April 24, 1996"). Both of Toliver's previous habeas petitions were filed after AEDPA went into effect. The AEDPA applied to those petitions and so would apply to this one too, *even if* some type of equitable relation back was recognized.

▉ And regardless, there is no relation back. A petitioner cannot move the effective filing date "to pre-AEDPA times by relying on his old unexhausted petition." *Sanchez v. Gilmore,* 189 F.3d 619, 623 (7th Cir.1999). In *Sanchez* the Seventh Circuit rejected the argument that pre-AEDPA law should apply to a petition filed in 1997

because the petitioner filed a previous petition back in 1990. The court found that the year of the second petition controls. The same is true for Toliver, and AEDPA applies.

## IV. ANALYSIS

### A. Denial of Appellate Counsel

#### 1. Clearly Established Supreme Court Case Law

▉ Therefore, to secure a writ under § 2254(d)(1) in regard to the appellate counsel claim, Toliver first must show that the United States Supreme Court had clearly established the propositions essential to his position as of the time of his direct appeal. *Schaff,* 190 F.3d at 522. A rule was not clearly established unless it was compelled by existing precedent. *Id.*

▉ The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. The amendment withholds from courts, "in all criminal proceedings, the power and authority to deprive an accused of his life or liberty unless he has or waives the assistance of counsel." *Johnson v. Zerbst,* 304 U.S. 458, 463, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). The right to the assistance of counsel

> is one of the safeguards of the Sixth Amendment deemed necessary to insure fundamental human rights of life and liberty.... It embodies a realistic recognition of the obvious truth that the average defendant does not have the professional legal skill to protect himself when brought before a tribunal with power to take his life or liberty, wherein the prosecution is presented by experienced and learned counsel.

*Id.* at 462–63, 58 S.Ct. 1019.

▉ *Johnson* recognized the right to assistance of counsel in federal criminal cases. *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), and *Argersinger v. Hamlin,* 407 U.S. 25,

92 S.Ct. 2006, 32 L.Ed.2d 530 (1972), extended the same right to state criminal trial proceedings via the Fourteenth Amendment. And *Douglas,* 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811, also via the Fourteenth Amendment, extended the right to assistance of counsel to a criminal defendant's first appeal as of right in the state courts. *McMann v. Richardson,* 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970), and *Cuyler v. Sullivan,* 446 U.S. 335, 344, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), recognized that the right to assistance of counsel at trial also means the right to *effective* assistance of counsel. *Evitts v. Lucey,* 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985), extended the right to effective assistance of counsel to any first appeal of right as well.[8]

The Supreme Court and other federal courts have recognized, however, that a defendant does not have the right to appointed counsel of his choice, nor does he have the right to insist that the attorney advance every argument, regardless of merit, urged by the appellant. *Evitts,* 469 U.S. at 394, 105 S.Ct. 830; *Jones v. Barnes,* 463 U.S. 745, 751, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983); *Oimen v. McCaughtry,* 130 F.3d 809, 811 (7th Cir. 1997), *cert. denied,* — U.S. —, 118 S.Ct. 1315, 140 L.Ed.2d 479 (1998); *see Wheat v. United States,* 486 U.S. 153, 159, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988) ("the essential aim of the [Sixth] Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers"). Nevertheless, in *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), the Court held that a criminal appellant may not be denied representation on appeal based on appointed counsel's bare assertion that he or she is of the opinion that there is no merit to the appeal. *See also Penson v. Ohio,* 488 U.S. 75, 80, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988) (summarizing holding of *Anders* ). The *Anders* opinion did, however, recognize that in some circumstances counsel may withdraw without denying the indigent appellant fair representation, provided that certain safeguards are observed: (1) counsel must first conduct a "conscientious examination" of the case, (2) any motion by counsel to withdraw must be based on an opinion that the appeal is frivolous and be accompanied by a brief referring to anything in the record that might arguably support the appeal, (3) the defendant must be furnished a copy of the brief and allowed to raise any points that he chooses, and (4) the appellate court then must itself conduct a thorough examination and decide whether the appeal is wholly frivolous. *Anders,* 386 U.S. at 744, 87 S.Ct. 1396; *see Penson,* 488 U.S. at 80, 109 S.Ct. 346. If the court concludes that there are non-frivolous issues for appeal, it must afford the indigent the assistance of counsel to argue the appeal; i.e. if there are arguable claims the criminal appellant is entitled to representation. *Id.* at 80, 84, 109 S.Ct. 346; *Anders,* 386 U.S. at 744, 87 S.Ct. 1396.

A defendant may waive his or her Sixth Amendment right to assistance of counsel. *Adams v. United States ex rel. McCann,* 317 U.S. 269, 275, 63 S.Ct. 236, 87 L.Ed. 268 (1942); *Johnson,* 304 U.S. at 465, 58 S.Ct. 1019. Such waiver must be "intelligent and competent." *Faretta v. California,* 422 U.S. 806, 835, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); *Johnson,* 304

---

**8.** The United States Constitution does not require states to allow appeals as of right to criminal defendants seeking to review alleged trial court errors. *Evitts,* 469 U.S. at 387, 400–01, 105 S.Ct. 830. But if the state has created appellate courts as an integral part of its criminal justice system, "the procedures used in deciding appeals must comport with the demands of the Due Process and Equal Protection Clauses of the Constitution." *Id.* Wisconsin's appellate courts are indeed an integral part of its criminal justice system. The Wisconsin Constitution guarantees a criminal defendant the right to a direct appeal from the conviction. Wis. Const. art. I § 21; *State ex rel. Flores v. State,* 183 Wis.2d 587, 604–05 n. 3, 516 N.W.2d 362 (1994).

**974**

U.S. at 465, 58 S.Ct. 1019. It is to be made only if the defendant "knows what he is doing and his choice is made with eyes open." *Adams*, 317 U.S. at 279, 63 S.Ct. 236 (citing *Johnson*, 304 U.S. at 468, 469, 58 S.Ct. 1019).[9] While a defendant need not himself have the skill and experience of a lawyer in order to competently and intelligently waive his right to counsel, he should be made aware of the dangers and disadvantages of self-representation before so choosing. *Faretta*, 422 U.S. at 835, 95 S.Ct. 2525.

> The purpose of the constitutional guaranty of a right to counsel is to protect an accused from conviction resulting from his own ignorance of his legal and constitutional rights, and the guaranty would be nullified by a determination that an accused's ignorant failure to claim his rights removes the protection of the Constitution.

*Johnson*, 304 U.S. at 465, 58 S.Ct. 1019.

 Courts indulge every reasonable presumption against waiver of the fundamental right to assistance of counsel. *Johnson*, 304 U.S. at 465, 58 S.Ct. 1019.

> [W]e do not presume acquiescence in the loss of fundamental rights. A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege. The determination of whether there has been an intelligent waiver of

right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.

*Id.* at 464, 58 S.Ct. 1019 (internal quotation marks, citations, and footnote omitted). Technical knowledge and skills as an advocate are not relevant to an assessment of whether a waiver may be made, however. *Godinez v. Moran*, 509 U.S. 389, 399–400, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993); *Faretta*, 422 U.S. at 836, 95 S.Ct. 2525.

 Whether there is a proper waiver should be clearly determined by the court, "and it would be fitting and appropriate for that determination to appear upon the record." *Johnson*, 304 U.S. at 465, 58 S.Ct. 1019. Supreme Court precedent does not require, however, any specific court procedure—such as a court hearing—for finding waiver.[10] The Seventh Circuit, in fact, has indicated that because appellate courts do not engage in face-to-face dialog with defendants a waiver of the right to appointed appellate counsel generally is accomplished through written communication rather than hearing. *Oimen*, 130 F.3d at 812. A defendant's own conduct may also serve to waive his right to appointed counsel. *Hall v. Washington*, 106 F.3d 742, 751 (7th Cir.1997).

Petitioner's opening brief refers often to failures of the Wisconsin Court of Appeals to abide by certain procedures regarding waiver suggested in *Flores*, 183 Wis.2d 587, 516 N.W.2d 362. State court cases such as *Flores* and *State v. Klessig*, 211 Wis.2d 194, 564 N.W.2d 716 (1997) (in which the Wisconsin Supreme Court mandated a prophylactic comprehensive colloquy in every case where a defendant seeks to proceed pro se, to prove knowing and voluntary waiver of the right to counsel), cannot factor into any analysis under 28 U.S.C. § 2254(d), though, unless perhaps a petitioner makes an argument that the state committed a violation of due process by not following its own clearly established rules. Toliver's petition is based, however, on the right to counsel rather than due process.

---

**9.** The standard for waiver does not differ between trial and appellate situations. *See Swenson v. Bosler*, 386 U.S. 258, 260, 87 S.Ct. 996, 18 L.Ed.2d 33 (1967) (waiver of the right to counsel on appeal must be made "knowingly and intelligently").

**10.** In *Von Moltke v. Gillies*, 332 U.S. 708, 724, 68 S.Ct. 316, 92 L.Ed. 309 (1948), a plurality of four justices, led by Justice Black, suggested that a court faced with a possible waiver of the right to counsel should make a "penetrating and comprehensive examination of all the circumstances" surrounding the waiver of counsel, investigating the defendant's apprehension of the nature of the charges, the statutory offenses, the range of allowable punishments, possible defenses, and all other facts "essential to a broad understanding of the whole matter." No majority has adopted these as requirements, however.

While a claim that counsel's performance was ineffective requires a showing of prejudice before a habeas petition can be granted, *see Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the complete denial of counsel does not, *Penson v. Ohio,* 488 U.S. 75, 88, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988). Actual denial of the assistance of counsel altogether, whether at trial or on appeal, is legally presumed to result in prejudice and can never be treated as harmless error. *Id.* A proceeding simply is unfair if the accused is denied counsel at a critical stage. *United States v. Cronic,* 466 U.S. 648, 659, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984).

All of the constitutional pieces essential to Toliver's petition were in place by 1988, when *Penson* was decided. *See Fern v. Gramley,* 99 F.3d 255, 258 (7th Cir.1996) (recognizing same). The constitutional right to assistance of appellate counsel, the standards for waiver of that right, and the remedy for violation of that right thus were well established at the time Toliver was convicted and took his appeal.

### 2. "Contrary to" or an "Unreasonable Application"

Toliver next must show that the state court's decision was either "contrary to" clearly established Supreme Court case law or, alternatively, an "unreasonable application" of Supreme Court case law. *Schaff,* 190 F.3d at 522. Whether a state ruling was "contrary to" Supreme Court case law is the question asked regarding purely legal determinations and is a de novo determination by this court. *Id.; Bowles,* 999 F.Supp. at 1254. "Section 2254(d) requires us to give state courts' opinions a respectful reading, and to listen carefully to their conclusions, but when the state court addresses a legal question, it is the law as determined by the Supreme Court of the United States that prevails." *Schaff,* 190 F.3d at 522 (internal quotation marks and citation omitted).

Whether a state court's holding involved an unreasonable application of clearly established federal law as determined by the Supreme Court is the question asked regarding mixed questions of law and fact, which are reviewed de novo but with a grant of deference to any reasonable state court decision. *Id.; Bowles,* 999 F.Supp. at 1255. Mixed constitutional questions of law and fact are those decisions requiring application of a legal standard to the historical-fact determinations. *Thompson v. Keohane,* 516 U.S. 99, 110, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995); *Bowles,* 999 F.Supp. at 1255. In regard to mixed questions, my mere disagreement with a state court's determination cannot carry the day. *Hennon v. Cooper,* 109 F.3d 330, 334 (7th Cir.1997). "Unreasonable" means "stronger than 'erroneous' and maybe stronger than 'clearly erroneous.'" *Id., quoted in Schaff,* 190 F.3d at 523. If the state court's application of law to facts was

> at least minimally consistent with the facts and circumstances of the case, we shall uphold the state court ruling, even if it is not well reasoned or fully reasoned, or even if it is one of several equally plausible outcomes. On the other hand, if the determination is at such tension with governing U.S. Supreme Court precedents, or so inadequately supported by the record, or so arbitrary, then the writ must issue.

*Schaff,* 190 F.3d at 523 (internal quotation marks and citations omitted).

Pursuant to 28 U.S.C. § 2254(e)(1) state court factual findings are presumed to be correct. A petitioner has the burden to rebut the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The state courts deciding Toliver's claim of denial of appellate counsel did not make any decision contrary to law in the purely legal sense—i.e. they did not hold that Toliver had no right whatsoever to appointed appellate counsel. Instead, the courts recognized that Toliver had a right

to the appointment of appellate counsel but found that he had waived that right. While state court findings of fact are presumed to be correct, this finding of waiver is not a straight issue of fact. Findings of fact to which the presumption applies are generally basic, primary, or historical facts in a recitation of events or regarding credibility of those witnesses. *Thompson*, 516 U.S. at 109–10, 116 S.Ct. 457; *Cuyler*, 446 U.S. at 342, 100 S.Ct. 1708. The state appellate court's determination of Toliver's waiver instead is a mixed determination of law and fact, requiring the application of legal principles to the historical facts surrounding Hintze's motion and Toliver's letters. Toliver therefore must establish that the state courts unreasonably applied the Supreme Court's clearly established principles described above.

 Toliver has met this high standard. The only evidence before the Wisconsin Court of Appeals when it found waiver and allowed Hintze to withdraw was Hintze's motion and Toliver's letter to the court. Hintze's motion alone is wholly inadequate to support a finding of waiver. While she stated that she had reviewed the file and discussed the case with Toliver and that Toliver said he did not want her to represent him, there is absolutely no statement indicating that she advised him or that he otherwise understood that he was not entitled to counsel of his choice and that it was possible no attorney would be appointed as a substitute. While she said Toliver wished to proceed pro se, she did not state that she had explained what that entailed and failed to indicate whether she explained the option of an *Anders* brief (if she believed no meritorious issues existed for appeal).

The appellate court itself conducted no inquiry into whether Toliver knew the potential pitfalls of waiving counsel. The court was required to consider Toliver's background, experience, and conduct, but it was given no information on these matters and failed even to try to obtain any. (Respondent, in fact, does not even contend that Toliver's background, experi-

ence, and conduct demonstrate a knowing and intelligent waiver.) Whether such an inquiry should have been made during a hearing or via written communication is not mandated, but the inquiry is. The Wisconsin Court of Appeals thus unreasonably based its finding of waiver on the scant information contained in Hintze's motion.

And rather than providing the court with better information on which to base its finding of waiver, Toliver's letter to the court instead sent up a red flag. It confirmed his likely misunderstanding regarding the appointment of substitute counsel if Hintze withdrew. Toliver wrote that *Hintze*, not he, had requested the withdrawal, and he clearly asked for the appointment of new counsel.

There is no finding by the state appellate court that, prior to the discharge of Hintze, Toliver was ever apprized that substitute counsel might not be appointed. Nor, if there was such a finding, could it be supported by the evidence, because the record instead shows misunderstanding. On the basis of Hintze's motion, combined with Toliver's letter, then, the Wisconsin Court of Appeals had insufficient grounds for allowing Hintze to withdraw and forcing Toliver to proceed pro se.

Moreover, when the Wisconsin Court of Appeals received Toliver's November 19, 1992 letter to the court, objecting to Hintze's withdrawal, it should have reversed course, as its constitutional error became even clearer at that time. The court of appeals, in its decision on Toliver's *Knight* petition, found that Toliver had not "immediate[ly]" objected to his attorney's withdrawal and only did so for the first time in the November 19 letter. Toliver's failure to truly object to Hintze's withdrawal until the November 19 letter, though, confirms that he misunderstood his rights concerning substitute counsel when he initially approved Hintze's withdrawal—that not until he received the SPD's report did he learn that it was Hintze or no one. If Toliver had knowing-

ly and intelligently waived his right to counsel, understanding the possibility that no substitute would be appointed, he would have had little reason to object after the request for substitute counsel was denied. Indeed, he would have had little reason to request substitute counsel at all. When the SPD and court of appeals refused that request, though, Toliver promptly objected, citing his right to appellate counsel guaranteed by *Evitts.*

The state itself conceded in its brief on Toliver's direct appeal that "[t]here is little information in the record concerning the withdrawal of the defendant's appellate counsel." (R. 5 Ex. E at 39.) The state believed that the "inference" to be drawn from the court's order of November 3, 1992, and defendant's letters is that "Hintze advised the defendant that there were no meritorious issues to raise on an appeal and that a no merit report should be filed. Rather than have his attorney file a no merit report, the defendant chose to proceed *pro se.*" (R. 5 Ex. E at 40–41.)

On the current record such an "inference" is pure speculation, however. Moreover, nothing indicates that Toliver was ever advised of the *Anders* brief option. If Hintze thought the appeal was meritless, Toliver was entitled to an *Anders* brief *and* an examination of the record by the court of appeals before the motion to withdraw was granted. *See Penson,* 488 U.S. at 82–83, 109 S.Ct. 346. If Hintze and Toliver merely disagreed on what issues would be presented, Toliver was entitled to be informed that his choice was Hintze or no one, as substitute counsel was not guaranteed. It is unclear which of these two scenarios actually occurred, but either way the state appellate court violated Toliver's right to counsel by allowing Hintze to withdraw on the record before it and me.

The record is indeed skimpy regarding Hintze's withdrawal, and its meagerness leads to the conclusion that a constitutional violation occurred. The Wisconsin Court of Appeals had to first presume that Toliver did *not* waive his right to assistance of counsel. *See Johnson,* 304 U.S. at 465, 58

S.Ct. 1019. It then had to find "an intentional relinquishment or abandonment of a *known* right or privilege" and confirm that Toliver was making his decision to proceed pro se intelligently and not in ignorance of his rights. *Id.* at 464, 58 S.Ct. 1019 (emphasis added). But at the time it granted Hintze's motion to withdraw as counsel and authorized Toliver to proceed pro se the Wisconsin Court of Appeals had no evidence that Toliver understood the scope of his right to counsel and the perils of self-representation, and thus was making a knowing waiver, intentionally abandoning his right to counsel. Although Supreme Court precedent does not mandate any specific procedures for establishing a waiver of the right to counsel, the Wisconsin Court of Appeals failed to use *any* means to provide Toliver with a warning or confirm that he was knowingly seeking to proceed pro se and had no misconceptions about whether substitute counsel would be appointed.

The Wisconsin Court of Appeals's treatment of Toliver's right to counsel stands in stark contrast to its actions during the proceedings underlying *Oimen,* a recent case in which its finding of waiver was upheld. Oimen and his appointed appellate counsel disagreed about whether the attorney would raise a claim of ineffective assistance of trial counsel. The attorney moved to withdraw; Oimen also filed a motion demanding that the appointed attorney withdraw and requesting that new counsel be appointed. Contrary to the record in this case, however, the record in *Oimen* established that the Wisconsin Court of Appeals had advised Oimen in writing that he might not be granted new appellate counsel if the first attorney were allowed to withdraw, and therefore that he might be forced to proceed pro se. Oimen then assured the court in writing that he would rather proceed pro se than with the appointed attorney. *See Oimen,* 130 F.3d at 810–11. The Seventh Circuit held that Oimen validly waived his right to counsel, as he was fully warned that if he insisted on his attorney's withdrawal he might not

get substitute counsel and clearly signaled his willingness to proceed pro se if the first attorney was his only other choice. *Id.* at 812.

Instead, Toliver's situation is extremely close to that of the habeas petitioner in *Hendricks v. Zenon,* 993 F.2d 664 (9th Cir.1993). Hendricks and his attorney had a falling-out over issues to be raised on appeal before the Oregon Court of Appeals. As a result, Hendricks asked the appeals court to remove his attorney and appoint new counsel, and his attorney filed a motion to withdraw. Hendricks's attorney had warned him that the court might not provide a new attorney and could require him to proceed pro se, which is what the court did. The Ninth Circuit, however, rejected the notion that Hendricks had really asked to represent himself: "The motion for removal of counsel was made in conjunction with a motion for appointment of new counsel. At no time did the defendant ever express a desire to proceed pro se. He merely moved for substitution of counsel. The State's argument is manifestly wrong." *Id.* at 669. Importantly, notwithstanding counsel's warning to Hendricks, the court found insufficient evidence in the record that Hendricks was advised of the dangers of self-representation or knowingly and intelligently waived his right to counsel. Said the Ninth Circuit: "If the Court of Appeals was going to deny his motion for substitution, it was compelled to keep the public defender in place to represent him, not forfeit his right to counsel." *Id.* at 671.

I note that the Wisconsin Court of Appeals's treatment of Toliver also differs substantially from its handling of other cases regarding the withdrawal of counsel. In *State v. Karls,* No. 98–0695, 226 Wis.2d 562 (table), 1999 WL 161068 (Ct.App. Mar. 25, 1999), the Wisconsin Court of Appeals found that it itself had committed a constitutional violation of a defendant's right to counsel in a situation where appellate

counsel moved to withdraw because of a conflict with the defendant. Unlike the situation in Toliver's case, counsel and the SPD had warned the defendant that if counsel was allowed to withdraw substitute counsel would probably not be provided. Meanwhile, Karls moved the appeals court and trial court for appointment of counsel. The court of appeals recognized that Karls had not made any express knowing, intelligent, and voluntary waiver: "The record is clear, and the State does not dispute, that Karls did not waive his right to post-conviction counsel. After we permitted his third post-conviction counsel to withdraw, Karls repeatedly requested both this court and the trial court to appoint counsel for him." *Id.* at *4. Nor, according to the court, had Karls, through his conduct, forfeited his right to counsel by creating the conflict with counsel or using the withdrawal of counsel as a means for delay.

In *State v. Frye,* No. XX–012419–CR (Wis.Ct.App. July 20, 1999),[11] counsel informed the court that his client wished to proceed pro se. In a five-page order the court noted its independent responsibility to determine that a waiver of counsel is made "knowingly, voluntarily and intelligently, as a deliberate choice to proceed *pro se* with an awareness of the difficulties such self-representation entails," *id.,* slip op. at 2; provided the appellant with information on how counsel could be valuable to him; informed him about his right to a no merit report; and, importantly, warned the appellant twice that it would not appoint successor counsel. The court allowed Frye an opportunity to advise the clerk whether he still wished to discharge his attorney and indicated that if Frye's response left the court "in doubt as to his understanding of the consequences of proceeding *pro se,*" the court would not authorize counsel's withdrawal. *Id.,* slip op. at 4.

---

**11.** *Karls* and *Frye* are unpublished decisions and therefore, under Wisconsin court rules, have no precedent value. *See* Wis.Stat. § 809.23. I cite them not for precedent, however, but to highlight the stark contrast between the protection of the right to counsel in other cases and the lack of such protection provided to Toliver.

In sum, the state appeals court's finding of waiver by Toliver is so inadequately supported by the record and so arbitrary that the writ must issue, The finding of a waiver is not minimally consistent with the facts and circumstances of the case and is in substantial tension with governing United States Supreme Court precedent regarding the guaranteed right to counsel on appeal. Toliver is no sympathetic character; regardless of whether he is guilty of the intentional murder of Rogers, he admits to horrifying acts—taping a picture of Rogers to her buttocks, helping wrap her body in plastic garbage bags, and dumping her alongside a road—that indicate an utter disrespect for human life. Nevertheless, the state courts committed an error of constitutional magnitude, and it is an error that under *Penson* causes the great writ to issue without any need to show prejudice. Prejudice is presumed.

▆▆▆ The writ will be granted conditionally, however, allowing the state to reinstitute Toliver's appeal and provide him appointed appellate counsel, unless he knowingly and intelligently elects to proceed pro se. *See Romero v. Tansy*, 46 F.3d 1024, 1031 (10th Cir.1995) (if petitioner did not waive right to counsel on appeal, case must be held in abeyance for 120 days to allow state appellate court to reinstate petitioner's appeal as if it had just been filed and provide him with counsel); *Castellanos v. United States*, 26 F.3d 717 (7th Cir.1994) (defendant receives right to an appellate proceeding, as if on direct appeal, with the assistance of counsel).[12] (*See also* R. 10 at 17–18 (respondent's argument that if Toliver was denied right to counsel on direct appeal, an appropriate remedy is a conditional writ directing release unless within a specified period of time the state provides for "commence-

ment of an appellate proceeding, as if on direct appeal").)

## B. Remaining Claims

Because of this resolution of Toliver's petition, I decline to address any of his other three claims, which he instead may raise on his "new" direct appeal. Toliver is concerned with this approach because he does not want to lose out on federal review of the remaining claims in his petition. It appears to me, however, that the recommencement of Toliver's direct appeal will wipe clean the slate and reset his direct review for purposes of AEDPA. By ordering a new appeal I have essentially "unexhausted" the remainder of his claims. *Hendricks*, 993 F.2d at 672 (order of new appeal for denial of right to counsel can allow habeas petitioner opportunity to raise constitutional issues in new appeal, "wiping the appellate slate clean"). In the event that his conviction is affirmed, he will have a new date on which direct review concludes and a new final judgment for purposes of any future federal habeas petition.

## V. CONCLUSION

**THEREFORE, IT IS ORDERED** that Toliver's petition for writ of habeas corpus is **GRANTED. IT IS FURTHER ORDERED** that execution of the writ is **STAYED** for 120 days and that Toliver be released from custody at the end of that period unless the state reinstates his direct appeal, providing him with appointed counsel, within that time.

---

12. Respondent suggests in his brief that I hold an evidentiary hearing to determine whether Hintze provided petitioner with the extra information that could establish waiver of counsel. An evidentiary hearing is not required, however. The record shows no inquiry whatsoever by the Wisconsin Court of Appeals into the basis for Hintze's motion, which is a failure by that court to meet its constitutional obligations. Moreover, even if Hintze informed Toliver of the possibility that substitute counsel might not be appointed, Toliver's letters to the Wisconsin Court of Appeals indicated that he did not understand it and thus still could not have made a knowing waiver.